Filed 7/22/13  P. v. Diaz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANK MUNOZ DIAZ,<br><br>Defendant and Appellant. | F063116<br><br>(Super. Ct. No. 10CM3737)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Harry N. Papadakis, Judge.[†]

Charles N. Bonneau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

---

[†]    Retired judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# INTRODUCTION

Appellant Frank Munoz Diaz physically and sexually abused his wife (the victim) for many years. He was convicted after jury trial of 13 felonies and 5 misdemeanors including spousal rape and assault with a knife. In this opinion we reject appellant's challenge to the sufficiency of the evidence and claims of evidentiary, instructional, sentencing and *Boykin/Tahl* error. (*Boykin v. Alabama* (1969) 395 U.S. 238, 242-244; *In re Tahl* (1969) 1 Cal.3d 122, 130-131.) We agree with the parties that the abstract of judgment contains a clerical error. The judgment will be affirmed and the superior court will be directed to prepare an amended abstract of judgment.

# PROCEDURAL FACTS

On December 7, 2010, a 13 count information was filed charging appellant with sexual and assaultive crimes committed on the victim during 2007 and 2008. First and second amended informations were subsequently filed. Appellant denied the charges and enhancement allegations. The matter proceeded to jury trial, which commenced on May 23, 2011.

On June 2, 2011, a 20 count third amended information was filed. Appellant was charged with three counts of assault by means of force likely to produce great bodily injury (counts 1, 4, 12), one count of assault with a deadly weapon (count 15) and one count of inflicting criminal injury on a spouse (count 18). (Pen. Code, §§ 245, subd. (a)(1), 273.5, subd. (a).)[1] He was charged in counts 2, 5 and 16 with making a criminal threat and in count 17 with dissuading a witness. (§§ 422, 136.1, subd. (c)(1).) He was charged in count 3 with attempted murder. (§§ 664/187, subd. (a).) Two counts of false imprisonment (counts 6 and 13) and one count of robbery (count 14) were charged.

---

[1]    Unless otherwise specified all statutory references are to the Penal Code.

(§§ 236, 211.)  He was charged with spousal rape (count 7), forcible sodomy (count 8), two counts of forcible sexual penetration with a foreign object (counts 9 & 10) and forcible oral copulation (count 11).  (§§ 262, subd. (a)(1), 286, subd. (c)(2), 289, subd. (a)(1), 288a, subd. (c)(2).)  He was charged with two misdemeanors:  spousal assault and violating a restraining order (counts 19, 20).  (§§ 243, subd. (c)(1) , 273.6, subd. (a).)  It was specially alleged in connection with counts 7 through 13 that appellant inflicted great bodily injury on the victim.  (§ 12022.7, subd. (e).)  It was specially alleged in connection with counts 15, 16 and 17 that appellant used a knife in the commission of these crimes. (§ 12022, subd. (b)(1).)  It was specially alleged in connection with all felony counts that appellant served five prior prison terms.  (§ 667.5, subd. (b).)

Appellant pled no contest to count 20 and admitted the prior prison term allegations.  The jury found appellant guilty as charged on counts 4 through 13, 15 through 17 and 19.  He was found guilty of misdemeanor assault as a lesser included offense to count 1, misdemeanor petty theft as a lesser included offense to count 14 and misdemeanor battery as a lesser included offense to count 18.  The great bodily injury enhancements attached to counts 7 through 13 and the knife use enhancements attached to counts 15 through 17 were found true.  He was found not guilty on counts 2 and 3.

On August 9, 2011, appellant was sentenced to an aggregate term of 84 years 8 months imprisonment.

## FACTS

The victim testified that she met appellant when she was a teenager and married him soon thereafter.  He was chronically abusive throughout their relationship, which spanned more than 25 years.  He was also a heroin addict.

The victim testified that one day during December of 2007 she was engaged in a telephone conversation with her mother when appellant entered the room.  He put a pillow over her face.  He eventually removed the pillow.  Her face was red and swollen.

She testified that on another day appellant forced her into a truck and drove to another city. On their way back home, he attempted to make her jump out of the moving truck. He slammed on the brakes, causing her to hit her head on the dashboard. He forcibly removed her from the truck and abandoned her on the side of the road.

The victim testified that one day in 2007 appellant punched her all over her body, removed her clothing, gagged her and tied her hands and legs. Then he jammed a beer bottle into her anus and vagina.

The victim described another incident during which appellant forcibly raped and sodomized her. He forced the victim to orally copulate him. She accidentally bit him. In response, appellant bit her left nostril and hit her. He locked her in a closet because "he was scared that [the victim] was going to get out of the house and go turn him in."

The victim testified that one day during September 2008 appellant needed money to purchase heroin. He punched her in the face several times, took $5 from her and left their home. When appellant returned, he severely beat her because he saw her footprints on the sidewalk and he had forbidden her from going outside. Then he stuck her head in a toilet containing his feces. He told her to "eat shit because [she] was worth a shit."

The victim testified about another incident that occurred during September 2008. Appellant grabbed a knife and put it to her throat. He said, "This is it, bitch." A short time later, the police knocked on their door. Appellant dropped the knife, ran to the couch and told the victim "to keep [her] mouth shut." Consequently, she told the police officer that she was "okay," which was a lie.

The victim testified about several uncharged acts of domestic violence.

The defense proffered testimony by some members of appellant's family that the victim falsely told them that appellant abused her when he had not done so. These relatives never saw appellant hurt the victim. Also, while appellant was married to the victim he had a long-term affair with Sandra Gayton. Gayton's daughters testified that appellant did not abuse Gayton and the victim was jealous of her.

4.

Corcoran Police Officer Alex Chavarria testified as a defense witness. On September 6, 2008, he conducted a welfare check at the victim's home. She did not display any indications of trauma and said that "everything was fine."

Christine Field, who is a family and marriage therapist, testified as a rebuttal witness. She treated the victim for posttraumatic stress syndrome from November of 2008 to March of 2010. The victim reported that, over a 20 year period, appellant raped her, tied her up, dunked her head in a bathtub filled with water, locked her in shed for many hours, inflicted a hip injury on her and knocked her teeth out.[2]

## DISCUSSION

### I. The Great Bodily Injury Enhancements Attached To Counts 9 And 10 Are Supported By Substantial Evidence.

#### A. Facts.

Appellant was charged in counts 9 and 10 with forcible sexual penetration with a foreign object in violation of section 289, subdivision (a)(1). It was specially alleged that during the commission of these offenses appellant inflicted great bodily injury on the victim within the meaning of section 12022.7, subdivision (e). The jury found appellant guilty on both counts and found the enhancement allegations true.

The victim testified that the unlawful sexual penetration charged in counts 9 and 10 were part of an incident that took place during 2007. Appellant punched the victim all over her body. He removed her clothing, put a gag in her mouth and tied her hands and feet. The victim repeatedly told him, "[N]o." Appellant said, "Well, you are my female bitch and I have the right to do what I want to do with you because [you are my] wife …." Appellant jammed a beer bottle into the victim's anus, turned her over, and jammed it into her vagina. While the bottle was inside the victim's vagina, appellant laughed and

---

**2**    Field's testimony about the reported abuse was admitted only "to show the state of mind of the witness, why the witness would have acted as she did or why the declarant might have acted the way she did."

said, "How does it feel bitch, how does it feel bitch, doesn't it feel good, that is what we do to whores, you whore, you're a tramp."

The victim described another incident in which appellant sodomized and raped her with his penis. Then the prosecutor returned to the beer bottle incident, asking: "[D]o you remember telling [a woman] about [appellant] using a bottle and putting it up your butt?" The victim replied, "Uh-huh." The prosecutor asked, "Do you remember telling her about one of the injuries that happened because of that?" The victim replied, "I told her I couldn't go to the bathroom. [¶]…[¶] I was bleeding from my butt." The prosecutor asked, "You told us about at least two separate incidents? [¶]…[¶] The first time he put …. [Y]ou said that one of the injuries was you couldn't go to the bathroom." The victim responded, "I was bleeding if I wiped myself." The prosecutor asked, "Which time was this, was this with the bottle or was this the other time that you told us?" The victim replied, "The bottle."

**B.     There is adequate proof of great bodily injury**.

"Abrasions, lacerations, and bruising can constitute great bodily injury." (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.) The determination whether great bodily injury occurred is essentially a question of fact, not of law. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) A challenge to the sufficiency of the evidence supporting the jury's true findings on a great bodily injury enhancement (§ 12022.7) is governed by the substantial evidence standard of review. (*Escobar, supra,* at p. 750.) When assessing a challenge to the sufficiency of the evidence, we review the record "'in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Before a conviction can be set aside for insufficiency of the evidence, "it must clearly appear that on no hypothesis whatever is

there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Appellant argues that there is insufficient evidence proving that he inflicted great bodily injury during the commission of the sexual penetration with a foreign object charged in counts 9 and 10 because the victim "described no physical symptoms beyond the act of penetration." He asserts that the victim's testimony about bleeding and inability to go to the bathroom related to the occasion when appellant sodomized and raped her with his penis as charged in counts 7 and 8. Not so. Appellant's citations to the reporter's transcript ends at page 928. If he had continued to the next page he would have read testimony given by the victim clarifying that the bleeding resulted from the beer bottle incident. As quoted above, the prosecutor asked "Which time was this, was this with the bottle or was this the other time that you told us?" The victim replied, "The bottle." Thus, the record affirmatively proves that that the victim's bleeding and consequent inability to go to the bathroom were caused by the unlawful penetration with a foreign object charged in counts 9 and 10, and not the rape and sodomy described in counts 7 and 8. Therefore, we reject appellant's challenge to the true finding on the great bodily injury enhancements and uphold the jury's verdicts.[3]

---

[3]    During oral argument, appellant's counsel stated that after rereading the reporter's transcript he was starting to think that the victim was referring in her testimony to the beer bottle penetration as the cause of the bleeding. He then asked for and was denied permission to brief a new issue: the sufficiency of the evidence supporting the great bodily injury enhancements attached to counts 7 and 8. "New issues cannot generally be raised for the first time in oral argument." (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098; *People v. Niles* (1964) 227 Cal.App.2d 749, 758.)

## II. Exclusion Of Testimony That The Victim Visited Appellant's Worksite Was Not An Abuse Of Discretion.

### A. Facts.

Appellant sought to admit testimony by one of the victim's sons that the victim went to a site where the son and appellant were working and did not want to leave. The prosecutor provided a summary of the expected testimony:

> "[The son] testifie[d], 'My step-dad was working, I was working, I had barely started, you know. My first, second day and my mom shows up on the job in the truck and he goes, son, can you go tell your mom to leave. I am like oh my God, man, the boss is looking at me, okay, this is mom, okay I told her to leave, she didn't want to leave. Okay, that is all I can do, now I am worried, it is towards the end of the day, if I am going to have a job still or not but luckily I still did, there is plenty of times where she has done that."

Defense counsel argued that this testimony was relevant because, "it just goes to she wants to paint a picture that she is fearful of this man, she can't wait to get away from him or what have you, and yet there is multiple incidents. She is showing up at Frank's workplace."

The court excluded this evidence on the basis of irrelevancy, reasoning: "There is all kinds of evidence that they got back together and he left and they got back together. I don't see the relevance of the going to the workplace other than to try to build the defendant's character that he works with his son and they have this relationship, irrelevant."

### B. The trial court correctly determined that this evidence was irrelevant.

Appellant asserts that the son's testimony was relevant and "should not have been excluded as more prejudicial than probative under Evidence Code [section] 352 just because it reflected poorly on [the victim's] testimony." This argument is not convincing. Evidence Code section 352 was not raised by the parties and the trial court did not rule on this point. The son's testimony was excluded because it was irrelevant, not because it was excessively prejudicial. This ruling is legally sound.

8.

"'Of course, only relevant evidence is admissible. (Evid. Code, § 350.)'" (*People v. Rundle* (2008) 43 Cal.4th 76, 129.) Evidence is relevant if it tends "to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "The test of relevance is whether the evidence 'tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' [Citation.] The trial court has broad discretion in determining the relevance of evidence, but lacks discretion to admit irrelevant evidence. [Citation.] We review for abuse of discretion a trial court's rulings on the admissibility of evidence. [Citations.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 90.)

When a defendant has proffered evidence, he bears the burden of producing adequate proof of all preliminary facts that are necessary to establish its relevance. (*People v. Rundle, supra*, 43 Cal.4th at p. 129.) "'Speculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such a purpose." (*People v. Babbitt* (1988) 45 Cal.3d 660, 681 (*Babbitt*).) Consequently, exclusion of evidence that produces only speculative inferences cannot be an abuse of discretion. (*Id*. at pp. 681-682.)

For example, *Babbitt, supra,* 45 Cal.3d 660 upheld exclusion of a television program log listing of the movies that were shown on channel 40 on the night of the charged crime because the inferences that the defense wished to draw from this evidence were speculative. The defense's offer of proof was not sufficient to attach any significance to the program content of channel 40 because there was no evidence that the defendant turned on the television during that period of time. (*Id*. at p. 682.) Therefore, the program log "would at most have provided a link in an incomplete chain of speculative inferences." (*Id*. at p. 683.)

Similar to *Babbitt*, appellant did not establish the relevance of the victim's presence at the worksite. Appellant sought to admit testimony that the victim went to a site where he and the son were working and did not want to leave when the son asked her to do so. The defense did not offer any proof that the victim came to the worksite specifically to see appellant, that she asked to speak to him or that she refused to leave until she did so. The defense did not offer any evidence showing that the victim attempted to interact with appellant during her visit to the worksite. Thus, the inferences appellant attempts to draw from the son's testimony are wholly speculative. For this reason, we uphold the trial court's determination that appellant failed to establish the relevance of the proffered evidence.

Appellant summarily asserts that as a result of excluding this testimony he "was denied the fundamental right to present evidence." To the extent appellant has attempted to present a claim of constitutional error, the point was forfeited. An appellate contention that the erroneous admission or exclusion of evidence violated a constitutional right may be considered only if an objection was interposed on this ground below. (Evid. Code, §§ 353, 354; *People v. Mattson* (1990) 50 Cal.3d 826, 853-854.) Appellant did not object below to exclusion of this testimony on constitutional grounds. Therefore, the point was not preserved for appellate review. In any event, this argument is unpersuasive. Since appellant "failed to meet the threshold requirement of relevance," exclusion of this testimony "did not implicate any due process concerns." (*Babbitt, supra,* 45 Cal.3d at p. 685.)

**C.** **The alleged error is harmless**.

In any event, the alleged error is harmless. Ordinarily, "violations of state evidentiary rules do not rise to the level of federal constitutional error." (*People v. Benavides, supra,* 35 Cal.4th at p. 91.) "[T]he applicable standard of prejudice is that for state law error, as set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (error harmless if it does not appear reasonably probable verdict was affected.)" (*People v. Cudjo* (1993)

10.

6 Cal.4th 585, 611.)  A judgment shall not be set aside on the ground of improper exclusion of evidence unless the error resulted in a miscarriage of justice.  (Cal. Const., art. VI, § 13.)  Here, any possible probative value of the son's testimony depended on the jury making inferential leaps to conclude that the victim came to the worksite in an effort to force appellant to reconcile with her.  Even if such leaps are made, the resulting probative value of this evidence is minimal.  It does not negate or contradict the victim's testimony concerning the charged offenses.  At most it created a factual question concerning her willingness to remain in an abusive relationship.  The evidence presented to the jury in this case strongly supported the prosecution's case.  We are confident that no rational juror would have disregarded the prosecution's case if it heard testimony that the victim visited appellant's worksite.  It is not reasonably probable that the jury would have returned a more favorable verdict if the trial court had admitted this testimony.  Therefore, the asserted error is harmless.

### III. Appellant's Confrontation Right Was Not Infringed By Admission Of Hospital Treatment Records.

#### A. Facts.

Dr. Carlos Santibanez was called as a defense witness.  He testified that from 2007 to 2010 he treated the victim for various medical conditions.  During two office visits in October 2007 the victim told him that appellant was abusive.  He did not report these statements to the police.  The victim saw Dr. Santibanez on September 8, 2008.  She did not report any recent injury.  He treated the victim for hip pain beginning on March 27, 2008.  On December 18, 2008, he prescribed her pain medication for chronic right hip pain.

On rebuttal, the prosecutor motioned to admit a three page hospital record documenting the victim's treatment by Dr. Scott Bowen on December 15, 2008.  (People's exhibit No. 23.)  In this hospital record, Dr. Bowen memorialized a conversation between the patient and himself.  He wrote:  "[Patient] 'I have problems

11.

[with] my [right] hip since 9/6/08. Husband abused me.' me 'why now?' [Patient] 'I was going thru a lot' Husband was kicking me. Pulled my leg. Held knife to my throat. Pain is from knee, all the way up the hip." The doctor diagnosed the victim with muscle strain and prescribed pain medication.

Defense counsel objected on grounds of hearsay and the confrontation clause. The prosecutor argued that the business records exception to the hearsay rule applied to the hospital record and the victim's memorialized remarks were admissible as prior consistent statements.

The court admitted the hospital record "as a prior consistent statement, and in rehabilitation [of] an impeached witness regarding her v[e]racity …." It did not expressly rule on the confrontation clause objection and defense counsel did not bring the omission to the court's attention.

The jury was instructed that the hospital record was introduced only "to consider the v[e]racity, the truthfulness of a previous witness."

## B.    Appellant's confrontation right was not infringed.

"[T]he Sixth Amendment to the federal Constitution gives a criminal defendant the right to confront and cross-examine adverse witnesses." (*People v. Lopez* (2012) 55 Cal.4th 569, 576 (*Lopez*).) In *Crawford v. Washington* (2004) 541 U.S. 36, "the court created a general rule that the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*Lopez, supra,* at p. 576.)

Appellant argues that admission of the hospital record infringed his right to confrontation because the victim "was never questioned about the hospital statement, and because the reporting doctor was never called as a witness." We are not convinced. As will be explained, the victim was called as a witness by the prosecution and the defense. She was most definitely available for examination concerning the hospital record. Also, the contents of the hospital record were not testimonial hearsay.

12.

### 1. The victim was available for examination on the hospital record.

We begin by pointing out appellant's fundamental misunderstanding of the extent of the confrontation right. He asserts that even though the victim testified at trial, admission of her memorialized statements contained in the hospital record violated his confrontation right because she was not questioned about these statements. We disagree. The right to confrontation only guarantees a defendant an *opportunity* to confront and cross-examine a witness. (*Lopez, supra*, 55 Cal.4th at p. 576.) It does not require the witness to be questioned on a specific topic. The victim was called as a witness by the prosecution and by the defense. In fact, she testified as a defense witness on surrebuttal *after* the hospital record was admitted. Thus, she was available for examination concerning the contents of the hospital record. Defense counsel made a tactical choice not to question the victim on this topic. Appellant cannot persuasively contend that his confrontation right was infringed because defense counsel elected not to question the victim about her statements to Dr. Bowen.

### 2. The hospital record did not contain testimonial hearsay.

Dr. Bowen was not called as a witness either at trial or at the preliminary hearing. Therefore, it is necessary to decide if the contents of the hospital record reflecting Dr. Bowen's observations about the victim's medical condition and his question to the victim why she came to the hospital for treatment "now" constitute testimonial hearsay. We answer this question in the negative. In fact, no portion of the hospital record constitutes testimonial hearsay.

In *Davis v. Washington* (2006) 547 U.S. 813, the United States Supreme Court held that statements made by a domestic abuse victim to a 911 operator were not testimonial. (*Id*. at pp. 827-828; see *Lopez, supra,* 55 Cal.4th at p. 580.) The primary purpose of eliciting the statements on the 911 call "'was to enable police assistance to meeting an ongoing emergency. [The declarant] simply was not acting as a witness; she was not *testifying*.' [Citation.]" (*Lopez, supra,* at p. 580.)

13.

Recently, in *Lopez, supra*, 55 Cal.4th 569, our Supreme Court explained that a statement is testimonial only when two critical components are present: (1) the out-of-court statement must have been made with some degree of formality or solemnity; and (2) the primary purpose of the out-of-court statement pertains in some fashion to a criminal prosecution. (*Id*. at pp. 581-582.)

Applying this standard to the hospital record leads to the conclusion that the hospital record does not contain testimonial hearsay. The hospital record was not made with any degree of formality or solemnity and its primary purpose was unrelated to a criminal prosecution. The hospital record reflects Dr. Bowen's diagnostic observations concerning the victim's health and his treatment plan. Dr. Bowen was not conducting a forensic examination or collecting evidence for any law enforcement agency. His purpose was limited to diagnosing and treating her reported hip pain. Dr. Bowen's question "why now" was made for the purpose of determining why the victim sought medical treatment three months after the injury occurred. The question was not made for the purpose of eliciting evidence to be used at a later trial. The victim's statements to Dr. Bowen were made to obtain medical treatment. Since neither of the critical components identified in *Lopez* are present in the hospital record, it does not contain testimonial hearsay.

For both of these reasons, we conclude that appellant's confrontation right was not infringed by admission of the hospital record.[4]

---

[4] In appellant's reply brief he summarily asserts "[t]he hospital records were not admissible as prior consistent statements because [the victim's] statements arose after, not before, her motive to falsely accuse appellant." "Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453; see also *People v. Dixon* (2007) 153 Cal.App.4th 985, 996.) Moreover, appellant did not develop this argument with supporting legal argument. "We need not address undeveloped points inadequately briefed." (*People v. Miralrio* (2008) 167 Cal.App.4th 448, 452, fn. 4.) For both of these

**IV. Appellate Issues Pertaining To Events On September 6, 2008 Lack Merit.**

    **A. Facts.**

The victim testified that on September 6, 2008, appellant was not in a good mood and was "already hitting on [her]." She was standing in the kitchen talking to her son on the telephone when appellant grabbed a knife out of a knife block. He put it on her throat and said, "This is it, bitch." She screamed to her son to "get me some help because he is going to kill me." Appellant took the phone away from her. She begged for her life. A police officer banged on the front door. Appellant dropped the knife, ran to the couch and told the victim to keep her mouth shut. The victim opened the door and the officer asked her to step outside. She told the police officer that she was okay but this was a lie. The police officer left. Appellant immediately began packing his belongings, including the kitchen knives. The victim's mother, sister and a niece and a nephew arrived at the marital residence. Appellant told the victim "to keep [her] mouth shut or else he was going to take my mom, my sister." Appellant also said, "My mom can have an accident walking down the street, hit-and-run, know what I mean, hit her with the truck." The victim believed that appellant was going to harm her mother or sister. Appellant asked the victim's mother for some gas money and she gave it to him. Appellant also took some money from the victim. Appellant drove away in his truck and never returned. After he left, the victim told her mother that appellant "put [a] knife to [her] throat." At an unspecified point in time the victim went to the police department and reported appellant's actions.

---

reasons, the point is deemed to have been forfeited. (*People v. Whalen* (2013) 56 Cal.4th 1, 72, fn. 28.)

**B.     CALCRIM No. 372 was supported by the evidence and was not prejudicial.**

The People requested CALCRIM No. 372 be given to instruct on flight as consciousness of guilt.[5]  Defense counsel objected to this instruction without articulating a specific legal basis.  The prosecutor argued:  "My position related to the defendant leaving on September 6, he committed a crime, the police responded to his house.  The victim's family members arrived at the house, and he moved all of his belongings out and took off … so it is my argument that he fled because he knew that the victim would be reporting him to the police."  The court ruled, "[T]here was testimony to that fact and he wasn't present.  There is some evidence for the jury to consider, so the Court will over objection instruct on [CALCRIM No.] 372."

On appeal, appellant argues the trial court erred by giving CALCRIM No. 372 because there was no evidence of flight.  We disagree.

"Penal Code section 1127c requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider.  This statute was enacted to abolish the common law rule that the jury could not be instructed on flight unless there was evidence defendant knew he had been accused." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243.)  "'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." [Citations.]'" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)  The prosecution is not required to "prove the

_____

[5]     CALCRIM No. 372 states:  "If the defendant fled [or tried to flee] (immediately after the crime was committed/ [or] after (he/she) was accused of committing the crime), that conduct may show that (he/she) was aware of (his/her) guilt. If you conclude that the defendant fled [or tried to flee], it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled [or tried to flee] cannot prove guilt by itself."

defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Ibid.*)

Here, the evidence showed that appellant packed all his belongings, demanded money from the victim and her mother and left the marital home immediately after the police conducted a welfare check on September 6, 2008. The jury could reasonably infer from this evidence that appellant's actions were intended to evade arrest because he thought the victim would report him to the police at her first opportunity. (See *People v. Howard* (2008) 42 Cal.4th 1000, 1021.)

In any event, even if there was insufficient evidence to support the instruction, any error in giving CALCRIM No. 372 "was harmless under any standard." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1225.) Appellant was not prejudiced by instruction on flight because the "cautionary nature" of the instruction "benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*Id.* at p. 1224.) At worst, the instruction "'was superfluous.'" (*Id.* at p. 1225.)

For both of these reasons, we reject appellant's claim of instructional error.

**C. Section 654 did not require stay of the sentence imposed for count 16.**

Counts 16 and 17 arose out of the events on September 6, 2008. Appellant was convicted in count 16 with making a criminal threat and in count 17 with dissuading a witness. A weapon use enhancement was attached to each count and found true by the jury. Appellant was sentenced on count 16 to one year and eight months (one-third of mid-term plus one year for the knife use enhancement) and he was sentenced on count 17 to two years (one-third of the mid-term plus one year for the knife use enhancement). The terms imposed on counts 16 and 17 were ordered to run fully consecutive to each other.

For the first time, appellant argues that section 654 requires the term imposed for count 16 to be stayed because counts 16 and 17 arose out of a single act with one intent and objective.[6] We are not convinced. As will be explained, counts 16 and 17 were based on separate acts with different intents and objectives.

Section 654 has been interpreted to prohibit multiple punishments for a single act or an indivisible course of conduct. "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one such offense but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) Whether a course of conduct is indivisible depends on a defendant's intent and objective, not temporal proximity of the offenses. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable

---

[6] This issue was not forfeited by appellant's failure to object on this ground during this sentencing hearing. "'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295.) Yet, "on direct appeal the reviewing court is confined to the record. We cannot remand a case to the trial court for the purpose of trying an issue raised for the first time on appeal." (*People v. Sparks* (1967) 257 Cal.App.2d 306, 311.)

to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

In this case, the victim's testimony supports an implied finding that the criminal threat conviction (count 16) was based on a separate act with a different objective from the witness intimidation conviction (count 17). The victim testified that appellant placed a knife next to her throat and said, "This is it, bitch." This act was the basis for count 16. Its purpose and intent was to threaten the victim and cause her to fear for her life. When the police knocked on the door, appellant dropped the knife, ran to the couch and told her to keep her mouth shut. This act was the basis for count 17. Its purpose was to prevent the victim from reporting his earlier action. We are persuaded by respondent's argument that "[t]he witness intimidation only occurred when the police responded to the first incident. Its purpose, to prevent [the victim's] cooperation with the police, was completely independent of the criminal threat." The victim's testimony about appellant's actions on September 6, 2008, constitutes substantial evidence supporting the trial court's implied finding that counts 16 and 17 were based on separate acts with different criminal objectives. Therefore, we uphold the imposition of separate punishment for each count.

## V. A Single Advisement And Waiver Was Sufficient With Respect To The Guilty Plea On Count 20 And Admission Of The Prison Term Allegations.

### A. Facts.

Appellant pled no contest to count 20 of the second amended information immediately before jury selection commenced on May 23, 2011. The trial court administered a full advisement of appellant's constitutional rights and obtained a waiver of these rights. Immediately thereafter, appellant admitted five prior prison term allegations as charged in the information.

On June 2, 2011, the third amended information was filed to conform to proof. Count 20 and the prior prison allegations were not changed. Although defense counsel

19.

said that appellant's "prior plea to Count 20 stands as well as his admission to the [prior prison] allegations," the court decided to "take an admission" to the prior prison term allegations. Appellant admitted the prior prison allegations. The court decided that the presence of count 20 in the third amended information was "just superfluous" and appellant's prior guilty plea on that count "stands."

## B.  Separate advisement was not required.

For a guilty plea to be knowing and voluntary the federal constitution requires that it must be based on an express and knowing waiver of the defendant's constitutional rights to a jury trial, to confront witnesses and against self-incrimination. (*Boykin v. Alabama, supra,* 395 U.S. at pp. 242-244; *In re Tahl, supra,* 1 Cal.3d at pp. 130-131.)

Appellant argues that the prior prison term allegations must be reversed because the trial court did not separately advise him of his constitutional rights and obtain waivers before accepting his admissions to these allegations. Respondent persuasively argues that *People v. Forrest* (1990) 221 Cal.App.3d 675 (*Forrest*) resolved this exact issue adverse to appellant's position. *Forrest*'s reasoning on this issue has not been criticized by other courts and we discern no basis to reject it.

In *Forrest, supra,* 221 Cal.App.3d 675, the defendant accepted a plea bargain and pled guilty to two counts of robbery and admitted enhancement allegations that included two prior serious felony convictions and service of a prior prison term. In accepting the guilty plea, the magistrate advised the defendant of his constitutional rights and the defendant expressly waived each of them. The appellate court rejected the defendant's argument "that before accepting a guilty plea and admissions of prior convictions in a single plea proceeding, the magistrate must expressly and separately advise defendant of his right to a jury trial on the prior convictions…." (*Id*. at pp. 678-679.) It held:

> "… that where there is nothing in the manner in which the plea is taken
> which actually or in effect separates the substantive offense from the prior
> conviction allegation, a single express advisement and waiver of
> defendant's constitutional rights is sufficient under *Boykin*, *Tahl* and

20.

*Yurko*…. [T]he single express advisement was sufficient in this case to inform defendant of each of his constitutional rights, including his right to a jury trial, with respect to both the guilty pleas to the substantive offenses and the admissions of the prior convictions and that defendant, as reflected in the record, knowingly waived each of those rights." (*Forrest, supra*, 221 Cal.App.3d at p. 681.)

Our review of the transcript of the plea proceedings on May 23, 2011, reflects that appellant's guilty plea to count 20 and his admission of the truth of the prior prison allegations occurred in a single proceeding. The trial court expressly advised appellant of his constitutional rights, including the right to jury trial, to confront witnesses and the protection against self-incrimination. Appellant expressly waived each of these rights. His guilty plea to count 20 and admission of the prior prison allegations occurred in a single proceeding. There was nothing in the manner in which the court took the plea that actually or in effect separated the substantive offense from the prior prison term allegation. Following and applying *Forrest*, we conclude "that the single express advisement was sufficient in this case to inform [appellant] of each of his constitutional rights, including his right to a jury trial, with respect to both the guilty pleas to the substantive offenses and the admissions of the prior convictions and that [appellant], as reflected in the record, knowingly waived each of those rights." (*Forrest, supra*, 221 Cal.App.3d at p. 681.)

**VI. There Is An Error In The Abstract Of Judgment**.

Rendition of judgment is an oral pronouncement. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) The abstract of judgment "'cannot add to or modify the judgment which it purports to digest or summarize.' [Citation.]" (*Ibid*.) When there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*Ibid*.)

The jury found true special allegations that appellant used a knife within the meaning of section 12022, subdivision (b)(1) during the commission of counts 15, 16, and 17. The court imposed one year for the knife use enhancement attached to count 16

21.

and an additional one year for the knife use enhancement attached to count 17; it stayed the knife use enhancement attached to count 15.

Appellant asserts that the abstract of judgment incorrectly cites the statutory basis for the knife use enhancement attached to counts 15, 16 and 17 as "12022.7(b)(1)" instead of 12022, subdivision (b)(1). Respondent concedes this point and we accept the concession as properly made. Since the abstract of judgment does not accurately reflect the judgment as orally pronounced, we will direct the trial court to prepare an amended abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment indicating that Penal Code section 12022, subdivision (b)(1) provides the statutory basis for the knife use enhancements attached to counts 15, 16 and 17 and to transmit copies of the amended abstract of judgment to the parties and appropriate authorities.

_____
LEVY, J.

WE CONCUR:


_____
WISEMAN, Acting P.J.


_____
PEÑA, J.

22.