Filed 9/19/22 Tye v. Escrow CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MATTHEW TYE, | |
| Plaintiff and Appellant, | E077065 |
| v. | (Super.Ct.No. RIC1601882) |
| EMERALD ESCROW, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Carol A. Greene, Judge. Affirmed.

Matthew Tye, in pro. per., for Plaintiff and Appellant.

Wilson Elser Moskowitz Edelman & Dicker, Ian A. Stewart, Sonya Tamiry and William S. Cook for Defendant and Respondent.

Plaintiff and appellant Matthew Tye appeals the grant of the demurrer filed by defendant and respondent Emerald Escrow Inc. (Emerald), which resulted in the dismissal of his third amended complaint (TAC) without leave to amend.

1

Tye's brother, Justin Tye, was involved in flipping houses for profit. Justin[1] and his cohort, Christopher Bowen, owned GF Services, LLC (GF), through which they purchased properties. They enlisted private investors to loan them money to purchase the properties promising that the loans would be secured by second trust deeds on properties owned by GF. Justin borrowed $100,000 from his and Tye's grandparents (Grandparents). Justin never paid them back and the loan was transferred to Tye to attempt to collect the money. Tye filed a lawsuit against Justin, Bowen, GF and other defendants seeking the return of his money. In a first amended complaint (FAC) and second amended complaint (SAC) he also named Emerald, who was the escrow agent for several property purchases and sales by GF. Tye then filed his third amended complaint (TAC), which alleged fraud, breach of fiduciary duty, negligence and breach of contract against Emerald and the other defendants. Emerald was granted relief from default several times throughout the proceedings for failing to respond based on improper service by Tye, and due to mistake and inadvertence by its counsel. The trial court granted Emerald's demurrer to the TAC based on Tye failing to allege facts to support the elements of the causes of action raised in the TAC.

On appeal, Tye insists that the TAC was supported by the facts as he pleaded agency, aiding and abetting, and conspiracy. Tye also contends the trial court should have allowed him to amend the TAC. He further contends the trial court erred by granting relief from default several times to Emerald for failing to respond.

---

[1] We use first names for clarity due to shared last names. No disrespect is intended.

# FACTUAL AND PROCEDURAL HISTORY[2]

### A.   ORIGINAL, FIRST AND SECOND AMENDED COMPLAINTS

Tye filed his original complaint on February 17, 2016, against Bowen, Justin, Charles Chacon, GF and Empire Financial Services, Inc. (Empire).  Emerald was added to the action in the FAC, which was filed on October 31, 2017.  Tye filed the SAC after meeting with Emerald's counsel to avoid a demurrer.  He filed the SAC on March 26, 2018.

Pursuant to the SAC, Justin, Chacon and Bowen all were the owners and partners of GF.  Justin also owned Empire and Active Realty, Inc. (Active).  Justin and Bowen, through GF, were involved in purchasing homes, fixing them up and then selling them.  Active would act as the broker for GF on the purchases and sales of these properties.  Justin told Tye they needed investors to help purchase and fund the rehabilitation of properties.  The investor would receive a second trust deed on the purchased properties and would be paid back with interest when the house was sold.

Based on Justin and Bowen's representations, Tye reached out to Grandparents to become investors.  Grandparents confirmed the representations with Justin, and loaned Justin $100,000.  The loan was processed through Justin's company, Empire.  The terms of the loan agreement were that the loan would be for the term of one year, and Grandparents would receive 15 percent interest.  They were to be paid back no later than

---

[2] Tye also alleges the trial court improperly granted relief from default on several occasions to Emerald.  We will address the facts on the motions for relief from default in the discussion, *post.*

May 19, 2014. When Justin had not paid the $100,000 back, Grandparents transferred all of their rights under the loan to Tye. Tye filed suit to seek repayment.

Tye alleged as to Emerald that it had handled numerous escrows for GF. He also claimed that an escrow officer at Emerald's office was related to someone at GF. There was collusion between GF and Emerald. Further, Emerald was negligent in how it carried out its duties regarding the escrow.

In November 2014, Tye demanded payment of the $100,000 investment from Bowen. Bowen agreed in January 2015 to make monthly payments of $3,000 commencing February 2015. Bowen never made the payments. Bowen and Tye further negotiated and Bowen agreed to make a one-time payment of $1,500. He never made the payment. Tye made numerous attempts to receive payment so as to not to have to file a lawsuit.

Tye alleged fraud against Emerald relying on the facts, *ante*. Tye also alleged breach of contract contending "Defendants" agreed to pay back the note with interest and it was never paid back.

Emerald filed a demurrer to the SAC. Emerald contended that the causes of action in the SAC for negligence and breach of contract failed to state facts sufficient to constitute a cause of action. Emerald insisted it had only provided escrow services for one of the properties purchased by GF. There had never been a contract between it and Tye. Further, Tye had failed to identify any breach of duty by Emerald. Emerald also argued that allegations all the parties conspired together were conclusory allegations that

4

did not support the causes of action. The allegations in the SAC were too vague to support a conspiracy or agency theory.

On March 6, 2020, Tye filed opposition to the demurrer to the SAC. Tye insisted that "Alter ego, conspiracy, aiding and abetting, and agency are not causes of action, they are merely doctrines of liability used to hold third parties responsible for the acts of others." Tye further claimed that although Emerald was not a party to a contract with him, it was liable under various third-party liability doctrines. Tye also was willing to amend the SAC to make the issues clearer. Emerald filed a reply on March 10, 2020. Emerald reiterated the facts were not sufficient to support the causes of action. Further, Emerald insisted the errors in the SAC could not be cured by amendment.

On September 21, 2020, after the hearing on the demurrer to the SAC was continued several times due to reassignment of the case and the Covid pandemic, Tye filed an additional opposition to the demurrer to the SAC and requested leave to amend. Tye again argued that the third-party liability for the causes of action was not a proper subject for demurrer. Further, the negligence and breach of contract causes of action were supported by sufficient facts. Emerald filed another reply on September 25, 2020.

The trial court granted the demurrer to the SAC without leave to amend on October 2, 2020. Tye filed a motion for reconsideration. He contended that the trial court erred by failing to allow him to amend the SAC and ignoring his third-party liability arguments. Emerald opposed the motion for reconsideration, and Tye filed a reply.

5

The motion for reconsideration on the SAC was heard on November 9, 2020, and taken under submission. On November 18, 2020, it was denied for failing to present new circumstances or law to support granting leave to amend the SAC. Tye also filed a motion to be allowed to file a third amended complaint. The motion was unopposed; it was granted, and Tye was allowed to file the TAC.

## B. THIRD AMENDED COMPLAINT

Tye filed the TAC on December 9, 2020. He named Bowen, Justin, GF, Empire, Active, and Emerald. Against Emerald, he raised the causes of action of fraud, breach of fiduciary duty, negligence and breach of contract. He alleged that all defendants aided and abetted each other in the wrongful acts. He stated, "For each wrongful/tortious act, each defendant was aware of the wrongful act, aided, promoted, encouraged, instigated or assisted in that act, and thereby caused harm." He also alleged conspiracy, merely stating "At all times herein, Defendants conspired with one another with regard to their wrongful conduct concerning Plaintiff. Each Defendant was aware of the wrongful acts of the others, agreed with those acts, and intended they be committed." He alleged they were all responsible under agency as follows: "Agency: At all times herein mentioned each Defendant was the agent or employee of each and all of the other Defendants and was acting within the course and scope of such agency or employment."

As for the facts, he alleged that Grandparents loaned Justin $100,000, which was to be paid back with 15 percent interest and was to be secured by second trust deeds on four specific properties. The contract regarding the loan was between Empire, a company owned by Justin, and Grandparents. The money was to be used to buy

6

properties, fix them up and then sell them. Justin signed for Empire. Tye alleged Justin committed promissory fraud in that he did not intend to repay the money to Grandparents and never intended to use the money for its intended purpose. Justin used the money to purchase his own vacation home and boat. Justin did not pay back the $100,000 after one year. Justin sent Grandparents false accountings that stated the money was used on six different properties. Justin never paid back the loan. Grandparents transferred the loan to Tye.

Tye then alleged that he had been assigned a $30,000 note that was secured by a deed of trust on a property located on Via Mazatlan in Corona (Mazatlan property). Justin and Bowen promised to record the note but never did. Tye alleged the Mazatlan property was sold by Justin and Bowen. Tye insisted that Emerald was aware of Tye's security in Mazatlan, stating "[Emerald] aided, promoted, encouraged, instigated and assisted Tye & Bowen in fraudulently selling the Mazatlan property and concealing the sale from Plaintiff, and thereby caused harm to Plaintiff." Tye contacted Justin about the Mazatlan property and was told it was sold for a "loss." He would not be paid back the $30,000 on the property. Tye alleged that this was a lie because Justin and GF had the financial means to pay him. Justin then advised Tye he would be paid on another property, which was located on Durham Drive in Riverside (Durham property). Justin assured Tye that the Durham property would be sold and he would be paid back his money from the proceeds. He was promised to be the second position deed on the Durham property. Tye alleged this was false because there were three other deeds on the Durham property. Justin knew there was not enough equity in the Durham property to

7

pay off Tye's note. The security in the Durham property was worthless. Tye was given a note signed by Bowen in the amount of $30,000 at fifteen percent interest dated August 2014, with a one-year term. Tye was never paid back.

As for Emerald, Tye alleged that Emerald was "generally aware" that Justin and Bowen were obtaining investors based on the understanding that GF would record the securities on properties it owned. GF, however, was not recording them. Emerald aided and abetted "this behavior so that the increasing number of escrows arising on unprofitable properties would close." Tye insisted that Emerald was "captive to" Justin and GF. Further, Emerald had undisclosed conflicts of interest. The escrow agent responsible for the escrows for GF was related to someone who worked for GF. Justin and GF used Emerald for "hundreds of escrows." Emerald had shown extreme hostility toward Tye during the legal proceedings showing it was acting in the interest of Justin.

For the first cause of action, fraud, Tye claimed that the "aforementioned fraudulent concealments" by the defendants in failing to disclose facts unknown to Tye constituted fraud. Emerald aided and abetted Justin and Bowen in the fraud and concealment. He further alleged that all defendants were the agent or employee of each and all other defendants. Further, defendants conspired with one another with regard to their wrongful conduct concerning Tye. He further alleged breach of fiduciary duty in the second cause of action was against all defendants, but there were no specific allegations against Emerald. All defendants breached their fiduciary duty through their aforementioned acts. Further, defendants aided and abetted each other in their breaches. Negligence in the third cause of action was alleged against all defendants. Defendants

8

had a legal duty to use due care in respect to Tye and breached that duty through the aforementioned actions. All defendants aided and abetted each other.[3] The fifth cause of action was for breach of contract for the Durham property. GF executed a $30,000 note in favor of Tye in August 2014; it was due in one year. It was never repaid. All defendants were liable through agency, conspiracy, and aiding and abetting.

Emerald filed its demurrer to the TAC on March 26, 2021. Emerald contended the first cause of action for fraud failed to state a claim and was uncertain. Emerald insisted that fraud allegations must be pled specifically and not based on general or conclusory allegations. Tye failed to allege what misrepresentations were made and who made them. Further, there was no allegation as to how the representations were false. There were no specific allegations of knowledge on behalf of Emerald. There was no evidence that Tye relied on the misrepresentations. The allegations on the Durham and Mazatlan properties were not pled with sufficient specificity. As for the breach of fiduciary duty, there was no allegation as to what fiduciary duty Emerald had to Tye and did not allege any facts of how the alleged duty was breached. Emerald did not have actual knowledge in order to aid and abet the breach of fiduciary duty.

The third cause of action for negligence was also uncertain and failed to state a claim. Tye could not show the existence of a duty. There was no legal relationship between Tye and Emerald. There was no causal link between Emerald's actions and Tye's harm. The only allegation was that someone at GF was possibly related to

---

[3] The fourth cause of action for breach of contract for the $100,000 note originally to Grandparents was only alleged against Justin, Empire and Active.

9

someone at Emerald. The breach of contract causes of action also failed as there was no proof of any contract between Tye and Emerald. Tye had not set forth the terms of any contract.

Tye filed opposition to the demurrer to the TAC. Tye insisted the trial court could only sustain the demurrer if all of the allegations of aiding and abetting, and agency, on the causes of action did not apply. Tye insisted that all of the causes of action were supported by the facts pled in the TAC. Further, Emerald could be responsible for aiding and abetting the actions of the other defendants on the breach of fiduciary and negligence causes of action. Even though Emerald had not been a party to the contract with Tye, it was responsible based on the law of agency.

Emerald filed a reply in support of the demurrer to the TAC. Emerald insisted that just alleging third-party liability did not make up for the fact that the allegations in the TAC were vague and conclusory. For fraud, there were no allegations as to what misrepresentations were made, or who made the misrepresentations. Also, there were no allegations of how Emerald aided and abetted a breach of fiduciary duty. The TAC did not meet the basic pleading standard for negligence.

C.     TRIAL COURT RULING ON THE THIRD AMENDED COMPLAINT

The trial court issued a tentative ruling granting the demurrer to the TAC on May 5, 2021. The trial court first addressed the cause of action for fraud. It found the TAC did not plead the cause of action with the requisite specificity. There were no allegations of the misrepresentation by Emerald or any material fact that Emerald concealed. The trial court also addressed the allegation that Emerald aided and abetted

10

other defendants in fraud and found that there was no allegation that it had consciously participated in any fraudulent activities. It then addressed negligence. The TAC once again failed to allege the existence of a duty. The aiding and abetting claim also failed. Finally, the trial court addressed breach of contract. Tye had admitted that Emerald was not a party to any contract.

At the hearing on the demurrer, Tye contended that the trial court had not addressed the third-party liability theories in the tentative ruling. The trial court disagreed, directing Tye to the second page of the tentative ruling. Tye insisted that the trial court in that argument only addressed aiding and abetting, and not agency. Tye insisted he had properly pled all of the causes of action and that Emerald had actual knowledge of the fraud, breach of fiduciary duty and negligence.

The trial court ruled, "So having heard everything and this is kind of a repeat of the prior demurrer that I did grant. [Tye], on this matter I agree that you put in the legal conclusions in your complaint. The complaint is very bare on any actual facts and that is what I was looking for as far as flushing that out. [¶] You have . . . not proven but pled the fraud cause of action against Justin Tye and GF, but you don't have similar allegations with regard to [Emerald]. And I've allowed you to present your best case on this and you have not come forward with any facts that would support your causes of action against them. [¶] So the tentative ruling shall be final and the demurrer is sustained without leave to amend."

The judgment of dismissal of the TAC without leave to amend was entered on May 10, 2021. Tye filed his notice of appeal on May 13, 2021.

**DISCUSSION**

A.    GRANT OF DEMURRER

Tye contends the trial court erred by granting the demurrer to the TAC. He insists that his agency allegations in the TAC were factual and had to be taken as true. He claims the trial court completely ignored the argument and the agency argument supported the causes of action in the TAC. He also insists the trial court did not address the allegations of conspiracy. Finally, he contends that he sufficiently alleged aiding and abetting liability to support the causes of action in the TAC.

1.    *STANDARD OF REVIEW*

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).)[4]

"Because a demurrer tests the legal sufficiency of a complaint, the plaintiff must show the complaint alleges facts sufficient to establish every element of each cause of action. If the complaint fails to plead, or if the defendant negates, any essential element of a particular cause of action, this court should affirm the sustaining of a demurrer." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and

_____

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

12

matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558; see also *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 303-304.) "We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.)

2. *AGENCY*

Here, Tye does not address each of the elements of the causes of action for fraud, breach of fiduciary duty, breach of contract, and negligence. Instead he merely states that his allegations of agency, conspiracy, and aiding and abetting were enough to support each cause of action.

First, the allegations regarding agency do not require reversal of the grant of the demurrer to the TAC. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) Agency is an ultimate fact for pleading purposes and is properly alleged simply by stating one defendant is the agent of a codefendant. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 437-438.) A generic allegation of agency may be disregarded if specific allegations contradict it. (*Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376.) "[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the agency." (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 691-692.) However, "agents are not vicariously liable for torts of their principals." (*Id.* at p. 692.)

13

Tye alleged that all defendants were the agent or employee of each other and were acting in the scope of such agency or employment. As such, the pleading provided that Emerald was an agent of Tye and Bowen, not a principal. The allegations in the TAC show that Emerald did not direct Justin and Bowen to commit any tortious acts. As such, Emerald could not be liable for the tortious acts as an agent based on the allegations in the TAC. Further, as shown *post*, Tye failed to adequately plead any claim of breach of contract. As such, the TAC did not adequately advise Emerald of the allegations against it as to agency liability by specifically pleading that Emerald was an agent and were not sufficient to overcome the demurrer.

3.     *CONSPIRACY*

Tye insists that his allegations of conspiracy as to all the causes of action were sufficient to support the TAC. "Civil conspiracy is 'a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.' [Citation.] 'By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.' " (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1473-1474.)

14

"To state a cause of action for conspiracy, a complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. [Citation.] The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." (*Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1327-1328.)

Conclusory allegations that the defendants engaged in a conspiracy are not enough to support a cause of action. (*Schick v. Lerner*, *supra*, 193 Cal.App.3d at pp. 1327-1329.) "Because civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it. [Citation.] They must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333.)

Here, Tye failed to properly allege a conspiracy was formed to support there was a conspiracy to commit any of the causes of action. The only allegations in regards to conspiracy were, "At all times herein, Defendants conspired with one another with regard to their wrongful conduct concerning Plaintiff. Each Defendant was aware of the wrongful acts of the others, agreed with those acts, and intended they be committed." Tye must have alleged when and how Emerald became a part of the conspiracy, and that Emerald had specific knowledge of acts committed by the other defendants. The allegations of conspiracy in the TAC were insufficient.

15

## 4. *AIDING AND ABETTING*

Tye alleged as to all the causes of action that Emerald aided and abetted Justin and Bowen. " 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.' [Citation.] ' " '[A]iding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct . . . . [I]t necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.' " ' " (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 583; see also *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846.)

### a. Fraud

Tye did not sufficiently plead that Emerald aided and abetted the alleged fraud committed by Justin and Bowen.

Tye alleged both fraud and fraudulent concealment. "The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) "The required elements for fraudulent concealment are: (1) concealment or suppression of a material fact; (2) by a defendant

16

with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606.)

"[F]raud must be pled specifically; general and conclusory allegations do not suffice. . . . 'This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

Here, Tye did not allege that Emerald gave "substantial assistance or encouragement" to Justin and Bowen to defraud Tye. (*Saunders v. Superior Court*, *supra*, 27 Cal.App.4th at p. 846.) Tye only alleged that Emerald was only generally aware of the actions of Justin and Bowen, even if they were considered fraudulent. Tye alleged that Emerald helped close escrows for Justin and Bowen, but in no way alleged that it provided encouragement or substantial assistance. He also did not identify what misrepresentations were made in these transactions. Moreover, Tye merely alleges that Emerald was aware that he had security in the Mazatlan property, but failed to show with any specificity how Emerald used that knowledge or encouraged Justin and Bowen to commit fraud. The failure to prevent a fraud from occurring, even if the defendant has knowledge the fraud is being committed, is not sufficient to state a cause of action for aiding and abetting the fraud. (*Austin B. v. Escondido Union School Dist.* (2007)

17

149 Cal.App.4th 860, 879.) As such, even if somehow Tye adequately alleged that Justin and Bowen had committed fraud or fraudulent concealment in selling the Mazatlan property, and Emerald knew about the fraud, Tye did not allege how Emerald provided substantial assistance or encouragement to Justin and Bowen. Tye simply did not allege sufficient facts to support that it aided and abetted fraud and fraudulent concealment.

### b. Negligence

A negligence cause of action requires the plaintiff to "show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629.) Again, Tye failed to allege that Emerald provided substantial assistance or encouragement to Justin and Bowen to breach a duty of care that it owed to Tye. The conclusory allegations that defendants aided and abetted each other for the negligence cause of action was not sufficiently pled.

### c. Breach of Fiduciary Duty

" 'The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.' " (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 645-646.) A plaintiff can sue a defendant for aiding and abetting a breach of a fiduciary duty, even though the defendant owed no fiduciary duty to the plaintiff. (*American Master Lease, LLC v. Idanta Partners, Ltd.*, *supra*, 225 Cal.App.4th at p. 1477.) Liability arises "when the aider and abettor makes ' "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." ' " (*Id.* at p. 1477.)

18

Here, Tye did not allege against Emerald that it made a "conscious decision to participate in tortious activity." Rather, Tye only alleged that Emerald was "generally aware" of the actions committed by Justin and Bowen. Tye also alleged that Emerald helped Justin and Bowen on hundreds of escrows. There was no allegation of Emerald's conscious decision to help Justin and Bowen breach its fiduciary duty to Tye sufficient to support the elements of the cause of action for breach of fiduciary duty against Emerald.

### d.    Breach of Contract

The elements of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) As recognized *ante*, courts have found that in the tort context, a defendant is liable for aiding and abetting another in the commission of an intentional tort. However, Tye has not provided any cases imposing contract liability on an aiding and abetting theory, and we have not found such a case. Even if there was such liability, Tye failed to allege the existence of any contract; an essential element of a breach of contract cause of action. Further, Tye failed to establish that Emerald provided substantial assistance and encouragement to Justin and Bowen to breach a contract. As such, Tye's claim fails.

Based on the foregoing, Tye failed to properly allege in the TAC that Emerald entered into a conspiracy with the other defendants, that it aided and abetted Justin and Bowen in committing tortious acts, or was a principal or agent of the other defendants to support the causes of action in the TAC. The demurrer was properly granted.

19

B.     LEAVE TO AMEND

Tye contends in his opening brief that the trial court should have afforded him leave to amend the TAC.  He insists he has never been given "any opportunity to amend."  Further, he contends in the opening brief and at oral argument that he could amend the TAC to provide the specific allegations that the trial court stated were missing from the TAC.

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.' " (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.)

Here, Tye insists he had no prior opportunity to amend.  However, this was the dismissal of his "third amended complaint."  Obviously, Tye had ample prior opportunities to amend.  Further, he alleges only that he could amend to address the trial court's problems with the TAC but provides this court with no specific facts or allegations.  He provides no specific allegations of how he would amend to show that Emerald was an agent of Justin and Bowen; how Emerald consciously aided and abetted tortious conduct by Justin and Bowen; or what conspiracy Emerald was involved in with

20

Justin and Bowen. Tye has failed to meet his burden of showing how he would amend the TAC to support the causes of action.[5]

## C. RELIEF FROM DEFAULT

Tye insists the trial court erred by granting Emerald's motions for relief from default throughout the proceedings.

### 1. *ADDITIONAL FACTUAL BACKGROUND*

#### a. Default Entered on May 14, 2018

On March 20, 2018, prior to Tye filing the SAC, Bowen, GF, and Emerald were dismissed from the action. Tye provided a proof of service stating he mailed the SAC to Ian Stewart, Emerald's counsel, on March 22, 2018; the SAC was filed on March 26, 2018. On May 14, 2018, Tye filed a request for entry of default against Emerald for failing to respond to the SAC. Default was entered on May 14, 2018, by the clerk of the court. Tye declared under penalty of perjury to have served Stewart and Emerald.

On February 21, 2019, Emerald filed a motion for clarification or to vacate the entry of default entered against it on May 14, 2018. Emerald argued that the entry of default was void for improper service or was impermissibly obtained by intrinsic fraud and mistake.

---

**5** At oral argument, Tye attempted to provide specific examples of how he could amend the TAC. However, such arguments should have been made in the briefing and need not be considered by this court. (See *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [new issues cannot generally be raised for the first time at oral argument].)

21

Emerald argued it had been dismissed from the action without prejudice on March 20, 2018. Tye filed his SAC on March 26, 2018. Emerald alleged it was never properly served with the SAC or the request for entry of default. On May 15, 2018, Stewart obtained "a copy of the SAC on file via a search of the Court's docket." He corresponded with Tye, advising him that the SAC was no different from the FAC. Stewart advised Tye that he would not accept service of the SAC on Emerald's behalf as it was written. On December 21, 2018, Tye emailed Stewart a proof of service dated March 22, 2018, which was purportedly proof of the service of the SAC. Stewart and Emerald never received the SAC. Stewart first became aware that default had been entered against Emerald on December 21, 2018. The court docket contained information both that the default was entered on May 14, 2018, and that it was pending.

Emerald sought clarification from the trial court if default had been entered. Emerald also sought to have the entry of default set aside pursuant to section 473, subdivision (d). The default should be vacated because Emerald was never properly served with the SAC. Both Stewart and a representative from Emerald declared they had never received a copy of the SAC. Further, the proof of service stated it was served on March 22, 2018, which was four days prior to the filing of the SAC. Emerald made a request for judicial notice of several items, including the SAC and the court's docket.

Tye filed opposition to the motion for relief from default on April 23, 2019. Tye insisted that Stewart and Emerald were lying about never being served with the SAC. Further, Stewart was aware of the SAC on or about May 4, 2018, and could have timely filed an answer. Stewart admitted having a scanned copy on May 15.

22

Emerald filed a reply to the opposition to the motion for relief from default on May 3, 2019. Emerald insisted that Tye did not provide admissible evidence that he properly served Emerald with the SAC. Mailing the SAC was not proper service. Further, actual notice did not defeat the failure to serve.

On May 14, 2019, the trial court granted the motion for relief from default without a hearing. It found that Emerald rebutted the presumption of proper service. Tye would have to properly serve Emerald with the SAC. The trial court found that Emerald "remains a dismissed party. Plaintiff will have to properly serve [Emerald] with the SAC."

### b. Default Entered on June 26, 2019

On June 26, 2019, Tye filed another request for entry of default against Emerald. It was entered by the clerk of the superior court on June 26, 2019. On September 4, 2019, Emerald filed its notice of motion and motion to set aside the entry of default. Emerald contended the entry of default on June 26, 2019, was void for improper service; secured by extrinsic fraud and mistake; and was entered as a result of mistake, inadvertence, surprise or excusable neglect.

Stewart attested he received an email from Tye on May 14, 2019, that the SAC had been served. Stewart never received the SAC. Emerald's agent for service of process did receive a copy in the mail. Stewart advised Tye that service by mail was not proper service. The entry of default on June 26, 2019, was void because Emerald was never properly served with the SAC. Tye must personally serve Emerald because it was

23

a dismissed party. Emerald argued that actual notice was not sufficient to require a response.

Emerald had notified Tye that he needed to personally serve the SAC but Tye believed he had properly served the SAC.

On October 3, 2019, Tye filed opposition to the second motion for relief from default. Tye contended his service by mail was proper. Further, Stewart had actual notice of the SAC but refused to file a response. Emerald was served with the summons on the FAC and the trial court had jurisdiction over Emerald. Tye had mailed copies of the SAC to both Stewart and Emerald. Tye emailed Stewart and Emerald on June 24, 2019, advising that he had served the SAC on May 14, 2019, and asking why there had not been a response. Both Stewart and the representative advised Tye they would not respond due to it being served by mail. Tye also presented a declaration from Mizuki Nishida that she had mailed the SAC to Stewart and Emerald.

On October 15, 2019, Emerald filed a reply. Emerald insisted because it had been dismissed as a defendant, Tye was required to serve it personally. Actual notice was not sufficient to overcome the lack of personal service.

The matter was heard on October 17, 2019. The trial court granted the motion for relief from default on November 4, 2019. It noted that actual notice is not itself a valid substitute for proper service of process and will not confer jurisdiction over a defendant. The trial court noted that Emerald had been dismissed on March 20, 2018. The trial court confirmed that Emerald was a dismissed party when granting the first motion for relief

from default. The trial court also found that Tye had to personally serve Emerald, which was never completed.[6]

### c.    Default Entered on January 12, 2021

On January 12, 2021, Tye filed another request for entry of default due to Emerald's failure to respond to the TAC. The clerk of the superior court entered the request on that day. On February 2, 2021, Emerald filed a motion to set aside any default and sought leave to file a responsive pleading. Emerald's counsel indicated that Tye had asked him to accept electronic service of the TAC, but Emerald refused electronic service. Also, Emerald's counsel believed that the TAC was not filed until January 25, 2021. Emerald noted that codefendants had attempted to file an answer to the TAC before January 25, 2021, but were advised that no TAC had been filed. Emerald's counsel believed the TAC had not been filed and so he had not responded on behalf of Emerald. It was counsel's fault if there was any default. Further, the TAC was not properly served. Emerald attached its demurrer to the TAC.

Tye filed opposition to the motion for relief from default. Tye insisted that Emerald received electronic notice of the TAC, which was actual notice. Further, the TAC had been filed on December 9, 2020, and a response was due. Tye attached an email purportedly sent to Emerald's counsel on January 8, 2021, informing him that the

---

[6] Tye also filed a motion to compel entry of default based on an allegation that Emerald did not timely file the demurrer to the SAC. The trial court denied the motion and found no default. Tye's argument in the opening brief only addresses the law as to relief from default. As such, we will not address the third request for default made by Tye as it was not granted.

TAC had been filed and was served electronically. Emerald filed a reply insisting that counsel had a good faith belief that the TAC had not been properly served and that it had not been filed.

On March 16, 2021, the trial court issued its tentative ruling granting the motion to set aside the default and allowing Emerald's demurrer to the TAC. The trial court noted that Emerald's counsel had filed an affidavit in support of mandatory relief. Counsel had mistakenly believed that no TAC had been filed. Emerald had properly attached the demurrer to the TAC and relief was granted. On March 16, 2021, counsel for Emerald gave notice that the motion for relief from default to file a demurrer to the TAC was granted.

2.      *ANALYSIS*

Here, the first two motions to set aside default were granted because the defaults were void. The trial court concluded that Tye did not attempt to personally serve Emerald and the mailing of the SAC was not proper service under section 415.20, subdivision (a).

The trial court properly determined that the defaults were void based on lack of jurisdiction over Emerald for Tye failing to affect proper service. Section 473, subdivision (d) provides that a trial court may "set aside any void judgment or order." "[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444.)

26

Section 415.10 provides in part, "A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery." Section 415.20, subdivision (a), provides, "In lieu of personal delivery of a copy of the summons and complaint . . . , a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. . . . Service of a summons in this manner is deemed complete on the 10th day after the mailing." Section 415.30 provides for service by mail, but only applies " 'to service of notices in a pending action upon a party who has appeared or has been served in that action.' " (*In re Jennifer O.* (2010) 184 Cal.App.4th 539, 548; *Thierfeldt v. Marin Hospital District* (1973) 35 Cal.App.3d 186, 198.)

"Whether a judgment is void due to improper service is a question of law that we review de novo." (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.)

Here, the evidence shows that Emerald had been dismissed from the case after the service of the summons on the FAC. Dismissal of a party is the equivalent of never being a party to the action. (See *Rogers v. Transamerica Corporation* (1935) 6 Cal.App.2d 340, 342.) As such, Emerald was not a party and had not made an appearance when Tye mailed the SAC on two separate occasions. Emerald was not a party and therefore Tye was required to personally serve the summons and SAC. (§§ 415.10, 415.20.)

27

Moreover, even if Tye could serve Emerald by mail pursuant to section 415.30, it was not effective. Section 415.30, subdivision (c), provides, "Service of a summons pursuant to this section is deemed complete on the date a written acknowledgment of receipt of summons is executed, if such acknowledgment thereafter is returned to the sender." There is no effective service by mail if the acknowledgment is not signed and returned. (*Thierfeldt v. Marin Hospital District, supra,* 35 Cal.App.3d at p. 199.) Here, there was no evidence that Emerald or Emerald's counsel returned a written acknowledgment of service.[7] As such, service by mail also was not effective service. Since Emerald was not properly served, the defaults were void.

Further, even if Emerald was aware of the SAC, it did not substitute for proper service. "Actual notice of the action alone, however, is not a substitute for proper service and is not sufficient to confer jurisdiction." (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 392.) The trial court properly determined that Emerald had not been properly served with the SAC and that the two defaults were void. The trial court properly granted Emerald's two motions to set aside the defaults entered on May 14, 2018, and June 26, 2019.

As for the final default—the failure to respond to the TAC—the trial court excused the default by finding that counsel mistakenly believed the TAC had not been filed.

---

[7] Tye had recourse pursuant to section 415.30, subdivision (d)—he could seek to charge Emerald for service by another method—but there is no evidence in the record that Tye sought such recourse.

28

"Section 473(b) contains two distinct provisions for relief from default. The first provision . . . is discretionary and broad in scope: 'The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.' [Citation.] The second provision is mandatory, at least for purposes of section 473, and narrowly covers only default judgments and defaults that will result in the entry of judgments. This provision . . . declares as follows: 'Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838-839.) "[S]ection 473, subdivision (b) makes relief mandatory only if the request for relief 'is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect.' " (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) Here, the second mandatory provision is applicable.

Emerald's counsel averred that the demurrer to the TAC was not filed because he had mistakenly believed that the TAC had not been filed. This was supported by

29

evidence that Emerald was aware a codefendant attempted to file an answer to the TAC and it was rejected because the TAC had not been filed.[8] The trial court found that counsel had filed an affidavit stating he had mistakenly believed that the TAC had not been filed and no demurrer was due. This supported the trial court's decision finding the motion for relief from default should be granted.

Tye has failed to show that this was an abuse of the trial court's discretion. Tye argues that Emerald's counsel made a "conscious, premeditated decision" not to respond to the TAC. However, the trial court reviewed the affidavit from Stewart and found it credible. It believed that Stewart had a good faith belief that the TAC had not been filed at the time default was entered. We find no reason to question Stewart's credibility. The trial court properly granted Emerald's motion for relief from default and allowed the filing of the demurrer to the TAC.

---

[8] This is supported by the register of actions in this case. On December 8, 2020, the trial court granted Tye's request to file the TAC. There is a notation on December 9, 2020, that the TAC was filed, but on January 11, 2021, Justin attempted to file an answer, which was returned. Tye filed a request for entry of default against Justin on January 12, 2021.

## DISPOSITION

The judgment if affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
                                                                              J.

We concur:


RAMIREZ _____
            P. J.


MENETREZ _____
            J.

31