[Civ. No. 19305.   First Dist., Div. One.   June 28, 1961.]

HARRY C. BOSCH, Appellant, v. STANDARD OIL COMPANY OF CALIFORNIA et al., Defendants; ARGONAUT INSURANCE EXCHANGE, Intervener and Respondent.

DeMeo & DeMeo and Fitz-Gerald Ames, Sr., for Appellant.

Partridge, O'Connell, Partridge & Fall for Respondent.

DUNIWAY, J.—Plaintiff and his attorneys appeal from an order made after final judgment. The order denied a motion, made by the attorneys alone, for an order awarding them attorneys' fees and a pro rata share of their out-of-pocket expenditures, to be paid from the portion of a judgment recovered in this action by intervener, Argonaut Insurance

Exchange. No question is raised by respondent Argonaut as to the standing of the attorneys to make the motion or as to the appealability of the resulting order. We therefore do not consider these matters, but decide the appeal on the merits.

The facts are as follows: Plaintiff Bosch was an employee of one Arthur B. Siri, Inc., and was seriously injured in the course of his employment. Argonaut was Siri's compensation carrier, and paid out, for medical care and other benefits under the Workmen's Compensation Act, $9,079.18. Thereafter, plaintiff filed this action, naming as defendants Standard Oil Company of California, James Alfred Vadon and R. A. Pellegrini. Argonaut intervened, seeking to recover the moneys paid out by it. After a trial lasting about four weeks, judgment was rendered upon a jury verdict awarding plaintiff $116,741.67 and Argonaut $9,079.18. Later, plaintiff agreed to settle for $110,000, payable $100,920.82 to plaintiff and $9,079.18 to Argonaut.

The motion was heard upon affidavits and oral testimony. We must assume, to the extent that there is any conflict in the evidence, that the court accepted the portions favorable to respondent. (*Quisenberry* v. *Rulison,* 129 Cal.App.2d 268 [277 P.2d 57].) The following is therefore taken from the affidavit of Mr. Partridge, one of respondent's counsel.

1. The accident occurred August 25, 1955, and was first reported to Argonaut on August 26, 1955.

2. On August 31, 1955, the office of DeMeo & DeMeo contacted adjusters for Argonaut requesting their assistance in developing the facts involved.

3. On September 20, 1955, the entire subrogation file, then possessed by Argonaut was forwarded to Argonaut's attorneys, and on the same date Argonaut wrote to DeMeo & DeMeo, advised them of that fact and further informed them of Argonaut's intention to prosecute its own claim.

4. On September 27, 1955, DeMeo & DeMeo wrote to Argonaut stating, ''we would prefer that the subrogation aspect of this case be handled independently by your own attorneys and we will likewise undertake to prosecute Mr. Bosch's claim for general damages and for special damages not covered by workmen's compensation.''

5. On September 29, 1955, Partridge advised DeMeo & DeMeo that the file was in his office and on the same day Partridge asserted by letter claims on behalf of Argonaut against defendants, R. A. Pellegrini and James Alfred Vadon.

6. On October 5, 1955, DeMeo & DeMeo advised Partridge of their preference that a complaint in intervention be filed on behalf of Argonaut.

7. DeMeo & DeMeo was granted consent by Argonaut to have Argonaut's adjusters, Reed and Corippo, make available all investigative information to DeMeo & DeMeo and cooperate with DeMeo & DeMeo in preparing further investigation. All medical reports were at various intervals forwarded to DeMeo & DeMeo and later to Mr. Fitz-Gerald Ames, Sr., for their use in preparing the case.

8. On April 27, 1956, counsel for Argonaut were advised of the association of Mr. Fitz-Gerald Ames, Sr. . . .

10. Pretrial conference was attended by representatives of Partridge's office who provided the court and parties with the necessary information and at that time sought stipulations with reference to the extent of expenditures made by Argonaut and all other necessary proof relating to the position and responsibility of Argonaut. Settlement negotiations were actively discussed by Partridge and other representatives of his office and on June 23, 1958, photostats of all bills paid by Argonaut were forwarded to Mr. Fitz-Gerald Ames, Sr., at the expense of Argonaut.

11. On the first day of trial, Partridge and Mr. Giordano of his office were present in court and at that time obtained stipulations from each of the defendants as to all proof necessary to show the position of Argonaut in the case and to show all of the expenditures made by that concern pursuant to its liability under the Workmen's Compensation Act. Partridge and Mr. Giordano attended the first morning of trial, including voir dire examination of jurors, and an opening statement was made to the jury in the form of a stipulation entered into with defendants, explaining in full the position of Argonaut in the case and the nature and extent of its claim against the defendants. At that time Partridge was excused by the court from further attendance at the trial.

12. In preparation of the case for trial and during the trial, Mr. Fitz-Gerald Ames, Sr., called upon the services of Partridge and Mr. Giordano of his office on various occasions and these services were freely given with the end in view of presenting necessary evidence before the court. On September 10, 1958, Partridge was requested by Mr. Fitz-Gerald Ames, Sr., to obtain certain X rays of Mr. Bosch and present them in court. On September 10th and 11th, Mr. Giordano and Partridge spent approximately two full days of time in con-

tacting the various doctors involved and in seeking to locate the X rays, and subpoenas were prepared and directed to Dr. Earl E. Anderson in Santa Cruz at Argonaut's own cost in an unsuccessful attempt to locate certain X rays. During the trial Mr. Fitz-Gerald Ames, Sr., called upon Partridge and Mr. Giordano to locate and deliver to him a certain contract and Mr. Giordano was required by Mr. Ames to deliver the contract and X rays to Mr. Ames in court before the jury.

Appellants had a contract with plaintiff for a contingent fee of 40 per cent of the net amount actually recovered on his behalf, and they spent $5,806.59 in preparing the case.

They assert that the court was in error because its decision is contrary to applicable law and to basic equitable principles. So far as equitable principles are concerned, their principal reliance is upon the dissenting opinions of Mr. Justice Carter in *Dodds* v. *Stellar*, 30 Cal.2d 496 [183 P.2d 658], and in *R. E. Spriggs, Inc.* v. *Industrial Acc. Com.*, 42 Cal.2d 785 [269 P.2d 876]. However, in each case the *holding* was that these principles could not be applied because the problem was governed by statute. The Legislature, perhaps stimulated by Justice Carter's dissents, has chosen its own language to express its own will in attaining its objective. We therefore turn to the statutes.

Appellants rely upon Labor Code sections, 3860, as amended in 1957 (Stats. 1957, p. 1825), and 3856, as amended in 1949 (Stats. 1949, p. 355). The former section does not apply here. It deals with the power of the Industrial Accident Commission. The applicable section is 3856. As amended in 1949, it provided as follows: ''The court shall first apply, out of the entire amount of any judgment for any damage recovered by the employee, a sufficient amount to reimburse the employer for the amount of his expenditures for compensation. If the employer has not joined in the action or has not brought action, or if his action has not been consolidated, the court, on his application shall allow, as a first lien against the entire amount of any judgment for any damages recovered by the employee, the amount of the employer's expenditures for compensation; provided, however, that where the employer has failed to join in said action and to be represented therein by his own attorney, or where the employer has not made arrangements with the employee's attorney to represent him in said action, the court shall fix a reasonable attorney's fee, which shall be fixed as a share of the amount actually received by the employer, to be paid to the employee's attorney on

account of the service rendered by him in effecting recovery for the benefit of the employer, which said fee shall be deducted from any amounts due to the employer.'' The proviso was added in 1949 and, it will be noted, it applies only where ''the employer has failed to join in said action and to be represented therein by his own attorney . . .''

Here, the ''employer'' (which term includes respondent insurer, Lab. Code, § 3850, subd. (b)) did join in the action and was represented by its own attorneys. Appellants' position must be that the representation was insufficient. But we find nothing in the evidence indicating that there was anything that counsel should have done, on behalf of Argonaut, the only party that they represented, that they did not do. Nothing in the statute indicates that, where the plaintiff is represented as he was here by his own counsel, there is any duty upon counsel for the employer-insurer to assume any of the burdens of representing the plaintiff. That was appellants' burden, and they were well paid for it. Why, when respondent had its own counsel, who competently represented it, should it have to pay plaintiff's counsel? We cannot presume that respondent's counsel were not paid, nor is that even suggested. Why should the employer-insurer pay twice? No reason is suggested, and we can see none.

As a practical matter, it is normally not desirable to have two sets of counsel, representing different interests, attempting to try each other's cases. That is why it is held that ''it is elemental that an intervener who comes into the case to join a plaintiff does so in subordination to and in recognition of the propriety of plaintiff's case. Necessarily this is so, because it is the plaintiff who has made himself liable to his counsel for legal services and has had to carry the brunt of all the expenses involved in preparing the case for filing and for trial,'' and '' [i]n a case of this character, as in any case, the plaintiff must be permitted through his counsel to dominate and control the suit to its conclusion, unfettered by the views of the interveners. . . . Of necessity some counsel in the case must determine these and other problems, and where there are several counsel some one must be the absolute master of the litigation. Hence counsel for an intervener may not participate in the presentation of the main case save as counsel for plaintiff may consent or the court otherwise order.'' (*Mann* v. *Superior Court,* 53 Cal.App.2d 272, 280-281 [127 P.2d 970].)

The trial court determined that Argonaut did join in the

action and was represented therein by its own attorneys. We cannot say that it was wrong.

The purported appeal by plaintiff is dismissed. The order is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied July 19, 1961, and appellant's petition for a hearing by the Supreme Court was denied August 23, 1961.