[No. G010671. Fourth Dist., Div. Three. June 29, 1992.]

NEW PLUMBING CONTRACTORS, INC., Plaintiff and Appellant, v.
NATIONWIDE MUTUAL INSURANCE CO., Defendant and Respondent.

## COUNSEL

Arthur J. Levine for Plaintiff and Appellant.

Bronson, Bronson & McKinnon, Ralph S. LaMontagne, Jr., John D. Boyle, Eric A. Amador and Stuart D. Hirsch for Defendant and Respondent.

## OPINION

**WALLIN, J.**—In this case we are asked to consider whether an employer who has assigned its subrogation rights to its workers' compensation insurance carrier has a cause of action against the carrier for negligence or breach of the implied covenant of good faith and fair dealing when the carrier does not actively pursue those subrogation rights. We conclude it does not.

New Plumbing Contractors, Inc., appeals a judgment dismissing its complaint against its workers' compensation insurance carrier, Nationwide Mutual Insurance Co., following the trial court's order sustaining Nationwide's demurrer without leave to amend.[1] It contends it stated causes of action for breach of the implied covenant of good faith and fair dealing and negligence arising out of Nationwide's failure to pursue its subrogation rights against a third party.

Nationwide issued a workers' compensation insurance policy to New Plumbing for a term from September 1, 1985, to September 1, 1986. The policy provided that New Plumbing's employer subrogation rights were granted to Nationwide stating, "We [Nationwide] have your rights, and the rights of persons entitled to the benefits of this insurance to recover our payments from anyone liable for the injury. You [New Plumbing] will do

---

[1]Since this case comes to us following a successful demurrer, we accept as true all material facts alleged in the complaint. (*Hepe* v. *Paknad* (1988) 199 Cal.App.3d 412, 415 [244 Cal.Rptr. 823].)

everything necessary to protect those rights for us and to help us enforce them." Under Department of Insurance regulations, New Plumbing's workers' compensation premiums for the policy years 1987 to 1988, 1988 to 1989, and 1989 to 1990, were in part based on its claims experience during the 1985 to 1986 policy period. Under the same regulations, if Nationwide recovered subrogation money for a claim made against New Plumbing during the 1985 to 1986 policy year, New Plumbing's "experience modification" for that year would have declined, resulting in lower premiums for the subsequent years. The regulations also provide that if the insurer receives subrogation money, the resulting reduction of experience modification applies only to the current and immediately preceding policy years.[2]

With this as background, New Plumbing based its breach of the implied covenant of good faith and fair dealing cause of action on the following allegations: In July 1986, an employee of New Plumbing, Peter Legro, was injured during the course and scope of his employment by a negligent third party. Nationwide paid the claim. In May 1987, Legro filed a complaint for damages against the negligent third party. The Legro complaint was served on New Plumbing and Nationwide as required by statute.[3] Nationwide failed to properly investigate or pursue its subrogation rights on the Legro complaint. It also failed to file a timely intervention, facilitate settlement or move the case towards trial. As a result, New Plumbing lost the opportunity to have its "experience modification" reduced and receive a refund of policy premiums for any of the 1987 to 1988, 1988 to 1989, or 1989 to 1990 policy years. Nationwide, however, still may recover subrogation money on the Legro complaint, which money will solely benefit Nationwide. Nationwide, as insurer, had a "quasi-fiduciary or fiduciary-type relationship" with New Plumbing in which Nationwide "had a duty not to place its own interests above those of New Plumbing."

New Plumbing's complaint also contained a negligence cause of action alleging Nationwide had a "fiduciary-type" duty to protect the interests of New Plumbing by recovering through subrogation the moneys paid to New Plumbing's injured employee so as to cause a revision of New Plumbing's "experience modification" and a reduction of its premiums. This duty was breached when Nationwide did not diligently pursue its subrogation rights.

---

[2]In other words, the complaint suggests that subrogation money received by Nationwide after the 1989 to 1990 policy year on claims submitted in the 1985 to 1986 policy year would not result in any refund of New Plumbing's premiums for the years which were impacted.

[3]Labor Code section 3853 provides, "If either the employee or the employer brings an action against such third person, he shall forthwith give to the other a copy of the complaint . . . . If the action is brought by either the employer or employee, the other may, at any time before trial on the facts, join as party plaintiff or shall consolidate his action, if brought independently."

The trial court sustained Nationwide's demurrer to the complaint on the ground that it failed to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) New Plumbing did not request an opportunity to amend and the demurrer was sustained without leave to amend.

I

New Plumbing contends it stated causes of action for negligence and breach of the covenant of good faith and fair dealing. Both are premised on New Plumbing's belief that Nationwide had a duty to diligently pursue its subrogation rights against the third party and failed to do so.

■ An employer who becomes obligated to pay workers' compensation benefits to an employee injured by a third party has a right to recover the total amount of compensation paid in addition to "damages for which [the employer] was liable including all salary, wage, pension, or other emolument paid to the employee . . . ." (Lab. Code, § 3852.) If the employer is insured for workers' compensation liability the carrier becomes subrogated to the employer's right of action. (Lab. Code, § 3850, subd. (b); Ins. Code, § 11662.) "[T]he insurer's subrogated right is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid." (*Commercial Union Assurance Co.* v. *City of San Jose* (1982) 127 Cal.App.3d 730, 733 [179 Cal.Rptr. 814]; see also *Kardly* v. *State Farm Mut. Auto. Ins. Co.* (1989) 207 Cal.App.3d 479, 488 [255 Cal.Rptr. 40].)

The statutory scheme provides the carrier with three options for enforcing its right of action to recover compensation benefits from a negligent third party. It may file suit against the third party in its own name. (Lab. Code, § 3852.) It may intervene in an action filed by the employee against the third party. (*Ibid.*) It may take no action and claim a lien against any judgment recovered by the employee. (Lab. Code, § 3856, subd. (b). See also *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 581 [184 P.2d 505]; *Smith* v. *Trapp* (1967) 249 Cal.App.2d 929, 936 [58 Cal.Rptr. 229].)

Here, Nationwide, paid Legro's compensation claim pursuant to the 1985 to 1986 policy. New Plumbing does not allege that payment of the claim was in any way improper. Pursuant to the policy and Insurance Code section 11662, Nationwide was subrogated to New Plumbing's rights as employer to recover the amounts paid on the claim.

■ The trial court correctly sustained the demurrer on New Plumbing's negligence cause of action. "Actionable negligence involves a legal duty to

use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) New Plumbing's position is that if Nationwide had recovered compensation benefits from the third party by 1990, New Plumbing would have received a refund of some of the increased premiums paid for the 1987 to 1988, 1988 to 1989 or 1989 to 1990 policy years. Nationwide, therefore, had a legal duty to actively pursue its subrogation rights. We conclude that because the workers' compensation law does not impose a duty on the carrier to pursue its subrogation rights in any particular manner, New Plumbing cannot state a cause of action for negligent performance of that duty.

 Nothing in the statutory scheme suggests a duty on the part of the carrier to select a particular method of pursuing its subrogation rights.[4] Nonetheless, New Plumbing urges the statute should be interpreted as imposing on the carrier a duty to select the method of pursuing its subrogation rights which will be most expeditious and best protect the insured.

New Plumbing makes much of what it terms the Legislature's intent in enacting Labor Code section 3852 to allow the employer to recover from third party tortfeasors all of the compensation benefits paid to the injured employee and all of the damages suffered by the employer as a proximate result of the third party's conduct. (See *State Comp. Ins. Fund* v. *Williams* (1974) 38 Cal.App.3d 218, 222 [112 Cal.Rptr. 226].) It suggests that this intent imposes a duty on the carrier possessing the employer's subrogation rights to make sure that the employer recovers all of its damages, including increased premium costs. However, in *Fischl* v. *Paller & Goldstein* (1991) 231 Cal.App.3d 1299 [282 Cal.Rptr. 802], the court held that increased workers' compensation insurance premiums were not damages to which the employer is entitled under the statute.

Were we to accept New Plumbing's argument, we would have to conclude that while the statutory scheme specifies several options for pursuing subrogation rights, the carrier must always file an action in its own behalf. If the

---

[4]We reject New Plumbing's contention that the statutory scheme cannot be interpreted as a matter of law and that the trial court was required to take evidence on the legislative intent in adopting the subrogation provisions. New Plumbing has not shown that the subrogation provisions are ambiguous or uncertain. (See *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148].) Nor does it offer any documents pertaining to the legislative history of the sections suggesting that the Legislature intended to impose any affirmative duty on the insurer to proceed in any one manner in pursuing its subrogation rights.

carrier allowed the employee to pursue the third party action and impose a lien on a judgment, the lien might not be satisfied until it was too late for the carrier's recovery to have any impact on the employer's premiums. The same risk applies to intervention in the employee's action. An intervener has no right to control the underlying litigation. (*Rhode* v. *National Medical Hosp.* (1979) 93 Cal.App.3d 528, 538 [155 Cal.Rptr. 797]; *Bosch* v. *Standard Oil Co. of Cal.* (1961) 193 Cal.App.2d 426, 430 [14 Cal.Rptr. 247].) Therefore, by intervening, the insurer could not necessarily recover the compensation benefits any sooner.

New Plumbing's argument would render the intervention or lien options inapplicable to a carrier. However, since the sections are specifically made applicable to the carrier (Lab. Code, § 3850, subd. (b)), we cannot adopt such a rule. Rather than impose a duty on the carrier to proceed in a specific manner, the statutory scheme gives the carrier its choice of proceeding in any manner. Furthermore, because subrogation is a right, not an obligation, the insurer presumably has the option of not pursuing subrogation recovery at all. Likely, this is often the case when the amount of benefits are relatively small and it would be economically unreasonable to pursue subrogation. New Plumbing has not stated a cause of action for negligence.

## II

New Plumbing also argues that Nationwide owed a fiduciary duty towards it as the insured which imposed upon Nationwide an implied obligation of good faith and fair dealing. This obligation was breached when Nationwide failed to timely pursue a subrogation recovery which may have resulted in a reduction or refund of future premiums.

"In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing . . . [requiring] each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].)

California courts have never squarely held that the relationship between the insurer and the insured is fiduciary. "[C]ases have held the relationship is 'akin to' a fiduciary relationship [citation] and 'characterized by . . . fiduciary responsibility' [citation], [but] it is not strictly a fiduciary one." (*Thompson* v. *Cannon* (1990) 224 Cal.App.3d 1413, 1417 [274 Cal.Rptr. 608].) Indeed, the courts have held that "the 'special' nature of the duties owed by an insurer are not owed because the insurer is a *true*

fiduciary, but simply because such 'special' duties are consonant with the special nature and purpose inherent in an insurance contract." (*Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1147 [271 Cal.Rptr. 246].)

Even assuming a fiduciary-type relationship exists, neither the duty nor the covenant of good faith and fair dealing extends beyond the terms of the insurance contract in force between the parties. (*Thompson* v. *Cannon*, *supra*, 224 Cal.App.3d at p. 1418; *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 448 [208 Cal.Rptr. 511].) "For the insurer to fulfill its obligation not to impair the right of the insured to receive the *benefits of the agreement*, it . . . must give at least as much consideration to the latter's interests as it does to its own." (*Egan* v. *Mutual of Omaha Ins. Co.*, *supra*, 24 Cal.3d at pp. 818-819, italics added.) The carrier's duty is to deal in good faith and fairly in discharging duties under the contract. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1169 [226 Cal.Rptr. 820].)

■ A carrier's decision regarding pursuing its subrogation rights after it has properly paid claims under the insurance policy does not affect the insured's receiving the benefits of the insurance agreement. ■ As explained in *Love* v. *Fire Ins. Exchange*, *supra*, 221 Cal.App.3d 1136, "Insurance contracts are unique in nature and purpose. [Citation.] An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. [Citation.] The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need. [Citation.] Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims. Thus, an insurer must investigate claims thoroughly [citation]; it may not deny coverage based on either unduly restrictive policy interpretations [citation] or standards known to be improper [citation]; it may not unreasonably delay in processing or paying claims [citation]." (*Id.* at p. 1148.)

■ New Plumbing has received the full benefits of the agreement. Nationwide paid the claim for which New Plumbing was insured and there are no allegations of impropriety in so doing. New Plumbing's complaint is that the cost of its future insurance is increased because of the claim and that if Nationwide had acted more diligently in pursuing rights which were assigned by New Plumbing to National, future insurance premiums would have been less. This does not implicate New Plumbing's receipt of benefits

under the contract. It implicates the marketplace aspect of its relationship with Nationwide, not the fiduciary-type relationship which pertains only to the receipt of benefits under the insurance policy.

New Plumbing cites five out-of-state cases which it contends compel a holding in its favor. (*National Sur. Corp.* v. *Fast Motor Serv.* (1991) 213 Ill.App.3d 500, 157 Ill.Dec. 619 [572 N.E.2d 1083]; *Deerfield Plastics* v. *Hartford Ins.* (1989) 404 Mass. 484 [536 N.E.2d 322]; *Corrado Bros.* v. *Twin City Fire Ins. Co.* (Del. 1989) 562 A.2d 1188; *Transit Casualty Co.* v. *Topeka Transportation Company, Inc.* (1983) 8 Kan.App.2d 597 [663 P.2d 308]; *Transport Indemnity Co.* v. *Dahlen Transport, Inc.* (1968) 281 Minn. 253 [161 N.W.2d 546].) The cases are distinguishable. Each involved an insurance policy which had a retrospective premium endorsement allowing the carrier to claim additional premiums under the policy due to claims settled during the policy term. In each case the employer objected to the retrospective premium being charged, contending the carrier had been negligent in investigating and settling the claims which resulted in the increased premium. Since the policies in question delegated to the carrier the right and duty of investigation and settlement of the claims, the courts held the burden was on the carrier to prove it had acted reasonably in settling before it could claim additional premiums under the retrospective premium endorsements.

By contrast, New Plumbing's complaint is not about negligent settling or investigation of a claim. It does not contend the Legro claim should not have been paid. Rather, it contends that having paid the claim, National was not aggressive enough in pursuing its own subrogation rights. Had National been more aggressive and recovered subrogation money before the 1989 to 1990 policy year, New Plumbing would have had some reduction in its premium for that year. New Plumbing is not complaining about the receipt of benefits under the 1985 to 1986 policy, rather it is complaining about what it had to pay in the marketplace for insurance in future years. This does not implicate a breach of any implied obligation of good faith and fair dealing.

### III

Finally, New Plumbing's complaint contained causes of action for negligence and breach of the covenant of good faith and fair dealing premised upon Nationwide's failure to pursue its subrogation rights. It did not seek leave to amend its complaint. In its brief New Plumbing argues only that these were viable causes of action and it should be allowed to amend its complaint to set out additional facts which have occurred subsequent to the filing of the complaint which "strengthen" those causes of action. It does not state what those facts might be.

At oral argument New Plumbing stated it now considers Nationwide's failure to pursue subrogation, and the causes of action based on those allegations, to be irrelevant. New Plumbing, for the first time at oral argument, suggested the possibility of new causes of action based on different facts. The causes of action New Plumbing suggests are fraud, deceit and breach of contract based on unspecified facts that would demonstrate Nationwide had improperly handled the claim from the outset. It would allege that Nationwide did not consider likelihood of subrogation money being ultimately recovered when setting aside funds to pay the Legro claim. This resulted in setting aside too much money for the claim causing New Plumbing's premiums to increase.

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the plaintiff can amend the complaint to state a cause of action. (*William S. Hart Union High School Dist.* v. *Regional Planning Comm.* (1991) 226 Cal.App.3d 1612, 1621 [277 Cal.Rptr. 645].) However, the burden is on the plaintiff to demonstrate how the pleading can be amended to state a cause of action. (*Ibid.*)

While the showing as to how the complaint may be amended need not be made to the trial court and can be made for the first time to the reviewing court (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387]), New Plumbing's argument, raised for the first time at oral argument, is not adequate to justify our finding the trial court abused its discretion. New issues cannot generally be raised for the first time in oral argument. (*Japan Line, Ltd.* v. *County of Los Angeles* (1977) 20 Cal.3d 180, 184 [141 Cal.Rptr. 905, 571 P.2d 254], rev. on other grounds in *Japan Line, Ltd.* v. *County of Los Angeles* (1979) 441 U.S. 434 [60 L.Ed.2d 336, 99 S.Ct. 1813].) Furthermore, New Plumbing has offered no authority demonstrating that these new causes of action are viable, nor did it offer any facts in support other than the conclusion Nationwide had mishandled the claim.

The judgment is affirmed.

Crosby, Acting P. J., and Sonenshine, J., concurred.