Filed 4/18/25  Logan v. ADP CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAULINE LOGAN, | B325259 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV11313) |
| v. | |
| ADP, INC., | |
| Defendant and Respondent. | |
| OLIVIA MCCABE, | B325441 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV33037) |
| v. | |
| ADP, INC., | |
| Defendant and Respondent. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Stephanie M. Bowick, Armen Tamzarian,

and Georgina T. Rizk, Judges.  Affirmed.

Employee Justice Legal Group, Kaveh S. Elihu, and Samuel J. Moorhead for Plaintiffs and Appellants.

Jackson Lewis, Connie L. Chen, and Dylan B. Carp for Defendant and Respondent.

––––––––––––––––––––

These combined appeals are from two separate actions alleging disability discrimination against ADP, Inc. (ADP), a company that provided human resources support to plaintiffs Olivia McCabe's (McCabe) and Pauline Logan's (Logan) former employer.  In brief, both plaintiffs allege they were terminated while on medical leave in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12940 et seq.).  Plaintiffs sued their former employer and ADP, and the trial courts sustained ADP's demurrers without leave to amend, concluding that plaintiffs had not adequately alleged that ADP (1) was an agent of plaintiffs' employer, or (2) aided and abetted the employer's alleged FEHA violations.

We affirm.  As we discuss, plaintiffs failed to state claims for agent liability because they did not allege ADP "carried out" the FEHA-regulated activities that gave rise to this action, and they failed to state claims for aider-abettor liability because they did not allege ADP knowingly encouraged plaintiffs' employer to

---

[1]     All subsequent undesignated statutory references are to the Government Code.

2

violate FEHA.  Accordingly, the trial court did not err in sustaining ADP's demurrers without leave to amend.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  The McCabe action (B325441).

#### A.  McCabe's complaint.

McCabe filed the present action in August 2020, and filed the operative third amended complaint (TAC) in August 2022 against Vandana Madkan, M.D. and Madkan Dermatology, P.C. (doing business as Mosaic Dermatology) (collectively, Madkan) and ADP.  The TAC alleged as follows:

Madkan is a medical practice specializing in medical and surgical dermatology.  ADP is a Delaware corporation that provided Madkan with human resources support.

Madkan hired McCabe as a medical assistant/phlebotomist in July 2018.  In December 2018, McCabe's physician placed her on medical leave "due to psychological symptoms that Plaintiff was experiencing as a result of her pre-existing psychiatric disorders."  Madkan told ADP about McCabe's medical leave request and asked how to address it.  ADP responded that Madkan could terminate McCabe once her accrued sick leave was exhausted.  Subsequently, Madkan told ADP that McCabe had not agreed to return to work despite having no accrued paid time

---

[2]    The court previously deferred ruling on the following motions, which we now deny:  (1) McCabe's request for judicial notice (filed May 6, 2024) in appeal no. B325441; (2) ADP's request for judicial notice (filed October 4, 2024) in appeal no. B325441; (3) ADP's motion to strike (filed October 4, 2024) in appeal no. B325441; and (4) Logan's request for judicial notice (filed May 17, 2024) in appeal no. B325259.

off left, and ADP advised Madkan to tell McCabe that she needed to return to work by December 13, 2018 or face termination for job abandonment. Madkan did so. McCabe did not return to work, and Madkan asked ADP how to proceed with the termination. ADP advised that Madkan should tell McCabe she had exhausted all of her paid time off, and because she did not qualify for a leave of absence, her absence was unexcused. ADP attached a pre-written termination letter to the email. Madkan made minor edits to the termination letter and sent it to McCabe. McCabe was terminated the same day.

McCabe alleged that ADP "advised, substantially encouraged, and aided and abetted . . . in the termination of [McCabe]," which "was completed with the express agreement and consent of ADP." Further, "ADP's advice and assistance was critical in [McCabe's] termination" because "[i]f ADP had advised [Madkan] not to terminate [McCabe], they would not have done so."

McCabe asserted that her termination gave rise to causes of action against Madkan and ADP for disability discrimination, retaliation, failure to prevent discrimination and retaliation, failure to reasonably accommodate, and failure to engage in a good faith interactive process, all in violation of FEHA (first through fifth causes of action), as well as for declaratory relief and wrongful termination (sixth and seventh causes of action).[3]

---

[3]    McCabe also asserted additional causes of action against Madkan for violations of the Labor Code and the Business and Professions Code. Those causes of action are not relevant to this appeal.

4

## B. ADP's demurrer.

ADP demurred to the TAC. ADP asserted it could not be liable to McCabe as her employer because it did not have any control over the details of her work. Further, McCabe failed to allege facts sufficient to sustain a claim for aiding and abetting because she did not allege that ADP acted consciously to violate her rights. ADP asserted: "[McCabe] does not allege that ADP . . . knew that Madkan's decision to terminate [McCabe's] employment was allegedly unlawful. The fact that [ADP] provided advice on the termination, as specifically alleged in the TAC, suggests that the opposite is true, as ADP stood to gain nothing by purposefully providing allegedly unlawful advice. Further, the requirement for aiding and abetting is that the accused party actually knew that the acting party was committing an unlawful act—not that it should have known. Here, [McCabe] fails to allege any facts to demonstrate that ADP had 'actual knowledge of the primary wrong,' and therefore, her aiding and abetting theory fails . . . . [¶] . . . [¶] . . . At best, [Madkan] has alleged that ADP gave advice that may have run afoul of the FEHA, but not that ADP knowingly did so. What is missing from [McCabe's] allegations is any semblance of a concerted plan to intentionally violate the FEHA. Further, this failure cannot be cured by amendment without violating the sham pleading rule. [¶] Quite simply, what [McCabe] is alleging is that ADP allegedly gave Madkan wrong advice, which caused Madkan to unlawfully terminate [McCabe's] employment. There is no assertion that ADP's purpose or intent was to act unlawfully, or that it had any knowledge that the termination was allegedly unlawful. Accordingly, [McCabe's] aiding and abetting theory for her FEHA claims fails as a matter of law."

McCabe opposed the demurrer. McCabe contended that ADP need not have been McCabe's employer to be liable under FEHA, and McCabe had sufficiently pled that ADP aided and abetted Madkan's unlawful discrimination against her. While McCabe conceded that "[t]here is an intent element in aiding and abetting liability," she asserted that the intent element could be satisfied by evidence that a defendant " 'had actual knowledge of the specific primary wrong the defendant substantially assisted.' " In the present case, the TAC alleged that ADP was aware that Madkan's conduct violated the law and intentionally participated in that conduct.

The trial court sustained the demurrer, finding that McCabe failed to allege sufficient facts to show that ADP employed McCabe within the meaning of FEHA or was liable for aiding and abetting a FEHA violation. With regard to the aiding and abetting claim, the court explained: "Based on [McCabe's] allegations, ADP did not and could not know that [Madkan's] conduct violated FEHA or constituted any other 'specific primary wrong.' [Citation.] [McCabe] alleges ADP's employee advised Madkan to inform [McCabe] 'that she had exhausted all paid time off, did not qualify for a leave of absence . . . and that her absence was therefore unexcused.' [Citation.] Unexcused absences are a facially legitimate reason to terminate an employee. Doing so would only be wrong or illegal if [McCabe] truly was entitled to be absent. Whether [McCabe] qualified for a leave of absence as a reasonable accommodation—and, if so, whether that accommodation constituted an undue hardship on her employer—is a fact-intensive inquiry. ADP did not know at the time whether firing plaintiff violated FEHA or any other law.

6

Encouraging and assisting [Madkan] to fire her therefore does not constitute aiding and abetting a FEHA violation."

The court also sustained the demurrer as to the nonstatutory claims, finding that McCabe's cause of action for declaratory relief "relies on plaintiff's other claims against ADP . . . and therefore fails along with the others," and the cause of action for wrongful termination failed because it could not be brought against someone who was not McCabe's employer.

Finally, the court denied leave to amend, concluding that McCabe failed to show a reasonable possibility of curing her complaint's defects. It explained: "[McCabe] has already amended the complaint three times. In her opposition, [McCabe] proposes adding generic allegations that ADP knew its actions and [Madkan's] actions violated FEHA. [Citation.] Those would constitute conclusory allegations that ADP knew something unknowable at the time. [McCabe] also proposes amending the complaint to allege [Madkan] hired ADP in reliance on ADP's representations that it was an expert on California employment law. [Citation.] Allegations about ADP's representations to and relationship with [Madkan] would not cure the complaint's defects."

The court entered a judgment of dismissal on November 17, 2022, from which McCabe timely appealed.

## II. The Logan action (B325259).

### A. Logan's complaint.

Logan filed an action against Madkan in March 2021, and filed her operative second amended complaint (SAC) against Madkan and ADP in August 2022. The SAC alleged as follows:

Madkan hired Logan as a medical assistant in July 2017. In April 2019, Logan told Madkan and ADP that she was scheduled for a major gynecological surgery in early May and would be out of work through the end of the month. ADP advised Madkan that Logan's requested medical leave would exceed her accrued paid time off and that Logan should be terminated when her paid time off was exhausted. On about May 9, 2019, while Logan was on medical leave, Madkan "on the advice and at the instruction of ADP, attempted to coerce [Logan] into resigning." Logan did not resign, and the same day, "under the explicit instruction and advice of ADP," Madkan terminated Logan. Logan believed she was terminated "due to her disabilities and/or perceived disabilities, engagement in protected activities, medical condition, medical leave and sex-gender."

Logan alleged that Madkan and ADP "acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled, and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so, including pursuant to Government Code §12940(i)." She further alleged that Madkan and ADP "formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to cause and actually causing Plaintiff harm."

Logan thus asserted that her termination gave rise to causes of action against Madkan and ADP for discrimination, retaliation, failure to prevent discrimination and retaliation, failure to provide reasonable accommodations, and failure to

8

engage in a good faith interactive process, all in violation of FEHA (first through fifth causes of action).[4]

### B. ADP's demurrer.

ADP demurred to Logan's SAC. ADP asserted that it could be liable to Logan under FEHA only if it was either Logan's employer or as an aider and abettor. Logan's SAC did not (and could not) allege that ADP employed Logan—i.e., that it had control of any of the details of her employment. The SAC also did not allege facts sufficient to establish that ADP aided and abetted Madkan's alleged unlawful acts. Specifically, the SAC did not allege that ADP knew that Madkan's decision to terminate Logan was unlawful or that ADP provided substantial encouragement to Madkan to commit known wrongs.

Logan opposed the demurrer. She contended that the SAC pled that Madkan and ADP jointly employed Logan or, alternatively, that ADP knowingly acted with Madkan to violate Logan's rights under FEHA. Logan also urged that if the court sustained ADP's demurrer, she should be permitted to file an amended complaint.

The court sustained the demurrer without leave to amend. First, the court found there were no specific factual allegations in

---

[4] Logan also asserted additional causes of action against Madkan under the California Family Rights Act and the Labor Code (sixth through sixteenth causes of action). Separately, Madkan filed a cross-complaint alleging comparative and equitable indemnity against ADP, to which the trial court sustained ADP's demurrer without leave to amend. Neither Logan's causes of action against Madkan nor Madkan's cross-complaint against ADP are relevant to this appeal.

9

the SAC suggesting that ADP "exercised such control over Plaintiff's employment nor any allegations that Plaintiff's work fell within ADP's regular industry to support the allegations that Defendant ADP was Plaintiff's 'employer' or 'joint employer.' " Second, the court said ADP could be liable for aiding and abetting Madkan's alleged unlawful employment practices only if "(1) [Madkan] subjected Plaintiff to unlawful employment practices under FEHA, (2) ADP knew that [Madkan's] conduct violated FEHA, and (3) ADP gave [Madkan] 'substantial assistance or encouragement' to act in violation of FEHA." The SAC failed to allege that ADP aided and abetted Madkan's alleged unlawful acts because the complaint's allegations were too conclusory to support claims that ADP knew that Madkan's conduct violated FEHA and substantially assisted in or encouraged that conduct. Finally, the court denied leave to amend because Logan had not adequately stated in her opposition what additional facts she could allege to correct the defects identified.

The trial court entered a judgment of dismissal in October 2022, from which Logan timely appealed.

## DISCUSSION

Plaintiffs contend that the trial court erred by sustaining ADP's demurrers without leave to amend because the complaints adequately alleged, or could be amended to allege, that (1) ADP was Madkan's agent, and (2) ADP aided and abetted Madkan's wrongful conduct. For the reasons that follow, we find no error.

### I.    Standard of review.

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we

10

exercise our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citation.]  First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  Next, we treat the demurrer as admitting all material facts properly pleaded.  Then we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citations.]  [¶]  We do not, however, assume the truth of contentions, deductions, or conclusions of law.  [Citation.]"  (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440.)

" 'When a demurrer is sustained without leave to amend, " ' "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." [Citation.]' "  (*State of California ex rel. Bowen v. Bank of America Corp*. (2005) 126 Cal.App.4th 225, 239.)'  (*State of California ex rel. McCann v. Bank of America, N.A.* (2011) 191 Cal.App.4th 897, 906 (*McCann*).)"  (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C*. (2023) 94 Cal.App.5th 521, 532–533.)  The plaintiff may make this showing in the first instance to the appellate court.  (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 992; *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

## II.    ADP's liability as Madkan's agent.

Plaintiffs do not contend that their complaints adequately alleged that ADP was liable as Madkan's business agent, but they urge they could allege agency liability if given the opportunity to amend.  We disagree.

11

## A. Agent liability under FEHA.

FEHA provides that it is an unlawful employment practice for "an employer" to discharge a person based on, among other things, a physical disability. (§ 12940, subd. (a).) "Employer" "includes any person regularly employing five or more persons, *or any person acting as an agent of an employer*, directly or indirectly . . . ." (§ 12926, subd. (d), italics added.)

Our Supreme Court recently discussed the scope of agent liability under FEHA in *Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268 (*Raines*). There, the plaintiffs alleged that they received offers of employment conditioned on successful completion of preemployment medical screenings conducted by defendant U.S. Healthworks (USHW). (*Id.* at p. 274.) As part of the screenings, USHW required applicants to answer questions about their medical histories that had no bearing on their ability to perform job-related functions. (*Ibid.*) The plaintiffs sued USHW and others, alleging violations of FEHA and other torts. The district court dismissed the plaintiffs' complaints against USHW, concluding that USHW was not the plaintiffs' employer within the meaning of FEHA. (*Id.* at pp. 274–275.) The plaintiffs appealed, and the Ninth Circuit asked the California Supreme Court to clarify the meaning of "employer" under FEHA. (*Id.* at pp. 273, 275.)

The Supreme Court concluded that FEHA does not impose liability on *all* agents, but in appropriate circumstances can impose liability on the "business-entity agents of employers"— i.e., on "business entities acting as independent contractors." (*Raines*, *supra*, 15 Cal.5th at pp. 276, 277, 279.) The court did not identify "the specific scenarios in which a business-entity agent will be subject to liability under the FEHA," but it held "as

12

a necessary minimum" that business-entity agents can be directly liable under FEHA only if they "*carr*[*y*] *out FEHA-regulated activities* on behalf of an employer."  (*Id.* at p. 288, italics added.)  In other words, the court explained, "a business-entity agent's obligation to comply with FEHA and its consequent liability for FEHA violations results from the entity's *own engagement* in FEHA-regulated activities on the employer's behalf."  (*Id.* at p. 290, italics added.)

## B.  Logan's and McCabe's complaints do not state claims for agent liability under FEHA.

Plaintiffs do not contend their operative complaints allege that ADP is liable for FEHA violations as Madkan's business-entity agent within the meaning of *Raines*, but they suggest they could amend their complaints to so allege.  Specifically, plaintiffs urge they could allege that (1) ADP "had agreed 'to guide [Madkan] through the termination of employees, including advising on the applicable federal, state and local employment laws,' " (2) ADP " 'represented that it was knowledgeable regarding the commercially accepted human resource practices for terminating employees and was knowledgeable regarding applicable federal, state and local employment laws,' " (3) Madkan " 'relied on ADP's advice and instruction regarding . . . termination,' " and (4) Madkan "acted solely and exclusively on the basis of the advice and instruction of ADP, which they followed systematically and without exception."  Plaintiffs assert these allegations state a claim for agent liability under *Raines* because they suggest Madkan "effectively and de facto ced[ed] [its] authority and discretion to ADP . . . [and] allowed ADP to exercise administrative functions traditionally exercised by an

13

employer and to control some of an employer's traditional rights, such as firing employees."

We conclude that plaintiffs' proposed amendments are not sufficient to state a claim for agent liability under *Raines.* Notably, plaintiffs do not contend they could truthfully allege that ADP carried out (or had the authority to carry out) the acts on which their FEHA claims are premised—that is, plaintiffs do not suggest that they could allege ADP had the authority to engage in the interactive process with, reasonably accommodate, or hire and fire Madkan's employees, or that ADP terminated their employment. Instead, plaintiffs appear to suggest that a third party carries out FEHA-regulated activities on behalf of an employer within the meaning of *Raines* if the third-party *advises* an employer on FEHA compliance, and the employer acts on that advice.[5] But nothing in *Raines* so suggests. To the contrary, *Raines* explained that "a business-entity agent's obligation to comply with FEHA and its consequent liability for FEHA violations results from the entity's *own engagement* in FEHA-regulated activities *on the employer's behalf*." (*Raines*, *supra*, 15 Cal.5th at p. 290, italics added.) And, in each of the federal cases on which *Raines* relied, the employer's agent was alleged to have "*act*[*ed*] on behalf of" an employer or "exercised ' *"control* of some of the employer's traditional rights," ' " such as by establishing a pay plan, formulating minimum standards for jobs, and promoting or demoting employees. (*Id.* at pp. 285, 287,

---

[5] The sole case plaintiffs cite for this proposition, *Mikhail v. Aeroseal, LLC* (E.D. Pa., May 4, 2016, No. CV 15-1505) 2016 WL 2346747, interpreted Pennsylvania's Wage Payment and Collection Law, not FEHA. *Mikhail* thus is not relevant to our analysis.

14

italics added.)  In other words, in *Raines* and the federal cases it cited, the alleged agents "*carrie*[*d*] *out* FEHA-regulated activities on behalf of an employer," and the alleged liability arose from the manner in which those activities were carried out.  (*Id.* at p. 288, italics added.)

In contrast to *Raines*, plaintiffs allege that ADP advised Madkan on FEHA compliance, but that *Madkan*—not ADP— made and implemented the decision to terminate plaintiffs. Specifically, Logan's SAC alleges that *Madkan* "rejected [Logan's] medical note and warned her that she faced termination if she requested accommodations," "attempted to coerce [Logan] into resigning," and "terminated [Logan]."  Similarly, McCabe's TAC alleges that "[McCabe's] psychologist received multiple phone calls *from Madkan,*'" McCabe "received multiple emails *from* [*Madkan's medical assistant*] instructing [McCabe] to return to work," and "*Madkan* . . . sent . . . [McCabe] [a] letter inform[ing] [McCabe] that she was being terminated due to a failure to return to work."  (Italics added.)  While ADP allegedly advised and instructed Madkan on each of these steps, plaintiffs have not alleged and do not suggest they could allege that ADP "carrie[d] out" the events that gave rise to this action.  (See *Raines*, *supra*, 15 Cal.5th at p. 288.)  Accordingly, neither plaintiff has established that she has (or can) state a claim against ADP as an agent of Madkan for violations of FEHA.[6]

---

[6]    Plaintiffs suggest we should not decide whether they can state claims against ADP as an agent of Madkan because they have "not yet attempted to plead [their] causes of action based on [ ] new facts and new legal theory," and thus "any discussion of [plaintiffs'] legal theory and cause of action 'would constitute an advisory opinion.'"  Not so.  As stated above, on an appeal from a

## III. ADP's liability for aiding and abetting.

Plaintiffs next contend that if given an opportunity to amend their complaints, they could state claims against ADP for aider and abettor liability under FEHA. For the reasons that follow, plaintiffs' claims lack merit.

### A. Aider and abettor liability under FEHA.

FEHA prohibits "any person" from aiding or abetting workplace discrimination. (§ 12940, subd. (i) [unlawful to "aid, abet, incite, compel, or coerce the doing of any of the acts forbidden by" FEHA].) Thus, "individuals and entities who are not the plaintiff's employer may be liable under FEHA for aiding and abetting the employer's violation of FEHA." (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145–146 (*Smith*); *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 389 (*Alch*).)

judgment dismissing a complaint after a successful demurrer, if the existing complaint does not state a claim, it is the plaintiff's burden to show " 'in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading.' (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43; see also *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["[t]he plaintiff has the burden of proving that an amendment would cure the defect"].) Only if a plaintiff does so can a reviewing court conclude that the trial court abused its discretion by denying leave to amend. (*Salazar v. Target Corp.* (2022) 83 Cal.App.5th 571, 577; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.) Determining whether plaintiffs have demonstrated their ability to state a cause of action if allowed the opportunity to replead thus is not an improper advisory opinion—it is, instead, an essential aspect of our appellate review.

Because FEHA does not define aiding and abetting, courts have applied the term's common law definition. (*Alch*, *supra*, 122 Cal.App.4th at p. 389, fn. 48; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325 (*Fiol*); *Smith*, *supra*, 64 Cal.App.5th at p. 146.) Under that definition, a " '[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person [1] knows the other's conduct constitutes a breach of duty and [2] gives substantial assistance or encouragement to the other to so act.' " (*Fiol*, at pp. 1325–1326; see also *Alch*, at p. 389, fn. 48 [quoting *Fiol*].)[7] Applied in the FEHA context, therefore, a third party defendant may be liable for aiding and abetting an employer's violation of FEHA "if the [third party defendant] *knew the employer's conduct violated FEHA* and gave 'substantial assistance or encouragement to the [employer] to so act. . . .' " (*Alch*, at p. 389, italics added; see also *Smith*, at p. 146.)

Applying this standard, the court in *Smith*, *supra*, 64 Cal.App.5th 138, considered whether a plaintiff stated a cause of action against third parties under FEHA for aiding and abetting harassment and discrimination by the plaintiff's employer. The court found the complaint did not properly allege aider and abettor liability because "[n]owhere in the FAC does [the employee] allege that [the third parties] knew of [the

---

[7] Under the common law, aider and abettor liability may also be imposed on one who "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." (*Alch*, *supra*, 122 Cal.App.4th at p. 389, fn. 48; *Fiol*, *supra*, 50 Cal.App.4th at pp. 1325–1326.) Plaintiffs do not allege that ADP had an independent duty to them under FEHA, and thus we do not address this issue.

17

employer's] alleged harassment and discrimination against [the employee]. [Citation.] Nor does [the employee] allege that [the third parties] knew [the employer's] conduct violated FEHA or that [they] gave [the employer] substantial assistance or encouragement to [the employer's] alleged violations of FEHA." (*Id.* at p. 146.)

In contrast, in *Alch*, *supra*, 122 Cal.App.4th at pages 389 to 390, the Court of Appeal found that a group of television writers had adequately alleged aider and abettor liability against defendant talent agencies because the plaintiffs' complaints "clearly allege the agencies knew the employers were engaged in systemic discrimination on the basis of age, and gave 'substantial assistance or encouragement' to the employers by virtue of their own referral practices, screening out older writers in favor of younger ones."

## B. Plaintiffs' complaints did not state claims for aider and abettor liability under FEHA.

Plaintiffs do not suggest they have alleged that ADP encouraged Madkan to act in ways ADP knew violated FEHA, but they urge that is not the proper test in the present case. They contend that *Smith* and *Alch* involved intentional torts, and thus those cases do not apply because disability discrimination is not an intentional tort. Instead, plaintiffs suggest, disability discrimination is a tort of negligence, and thus ADP can be liable for aiding or abetting Madkan's alleged disability discrimination

18

if it encouraged Madkan to take acts it "knew *or should have known*" violated FEHA. (Italics added.)[8]

Plaintiffs' argument lacks merit. As an initial matter, plaintiffs erroneously assert that disability discrimination is not an intentional tort. The case they cite for this proposition does not support it; rather, it holds that "where . . . an employee is found to be able to safely perform the essential duties of the job, a plaintiff alleging disability discrimination *can establish the requisite employer intent to discriminate* by proving (1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action." (*Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 129 (*Wallace*).) Manifestly, a cause of action for which an intent to discriminate is "requisite" is an intentional tort. (See *Bailey v.*

---

[8]     Although neither plaintiff made this contention in the trial court, we reject ADP's contention that plaintiffs therefore forfeited it. "The Supreme Court has repeatedly stated that appellate courts reviewing a general demurrer make a de novo determination of whether the complaint alleges 'facts sufficient to state a cause of action under *any possible legal theory*.' " (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244.) "Accordingly, the 'any possible legal theory' standard encompasses a legal theory presented for the first time in an opening appellant's brief." (*Ibid.*; see also *Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1367 ["We may consider new theories on appeal from the sustaining of a demurrer"].)

*San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 636 ["Intent is not an element of negligence"].)[9]

Moreover, even if disability discrimination were a tort of negligence, plaintiffs still could not plead aider and abettor liability merely by alleging that ADP encouraged conduct that it "knew *or should have known*" violated FEHA. It is true, as plaintiffs assert, that there are several cases that arguably recognize liability for aiding and abetting negligent conduct. (See *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1290 (*Navarrete*) [for purposes of joint liability under a concert of action theory, "it suffices that [the passenger] assist or encourage [the driver's] breach of a duty"]; see also Use Note to CACI No. 3610 ["It appears that one may be liable as an aider and abetter of a negligent act"].) But none of those authorities suggest, as plaintiffs would have us do, that a defendant can be liable for aiding or abetting in the absence of *actual knowledge* that the act to which encouragement is given is tortious—or, stated differently, that "it is legally possible for [plaintiffs] to satisfy the scienter or knowledge element of [their] causes of action for aiding and abetting against ADP by using a negligence standard (i.e., [that] ADP knew *or should have known* that [Madkan's] conduct violated FEHA)." (Italics added.)

---

[9] Plaintiffs are correct that *Wallace* held that "animus" is not a necessary element of a disability discrimination case. (See *Wallace, supra,* 245 Cal.App.4th at p. 115 ["California law does not require an employee with an actual or perceived disability to prove that the employer's adverse employment action was motivated by animosity or ill will against the employee"].) But "animus" is not synonymous with "intent."

In *Navarrete, supra,* 237 Cal.App.4th at page 1286, for example, the court explained that "[t]he concert of action theory of group liability 'may be used to impose liability on a person who did not personally cause the harm to plaintiff, but whose " '[a]dvice or encouragement to act operates as a moral support to a tortfeasor[,] and *if the act encouraged is known to be tortious*[,] it has the same effect upon the liability of the adviser as participation or physical assistance.' " ' " (Italics added.) Similarly, in *Orser v. George* (1967) 252 Cal.App.2d 660, the court held that a defendant who did not fire a bullet that killed a decedent nonetheless could be liable to the decedent's heirs if the defendant "*knew* [*the shooter's*] *conduct constituted a breach of duty* owed [the decedent] and [gave the shooter] substantial 'assistance or encouragement.' " (Italics added.) And, CACI No. 3610 (Aiding and Abetting Tort) provides that an element of the tort of aiding and abetting is that the defendant "*knew that* [*a tort*] *was* [*being/going to be*] *committed.*" (Italics added.)

For the foregoing reasons, we conclude that to state a claim for aider and abettor liability under FEHA, plaintiffs must allege that ADP encouraged Madkan to take actions ADP *knew* violated FEHA. Neither plaintiff has done so; indeed, both plaintiffs *concede* they have not adequately pled that ADP knowingly aided and abetted Madkan's alleged FEHA violations under the test articulated in *Smith* and *Alch*. The trial court thus did not err in sustaining ADP's demurrer to the aider and abettor claim.

Further, the trial court did not abuse its discretion in denying leave to amend. In the trial court, plaintiffs did not articulate any specific amendments that would cure the pleading defects as to aider and abettor liability. Nor did plaintiffs do so in their appellate briefs, merely asserting that they could allege

21

that ADP "was familiar with FEHA and its unique characteristics, and a reasonable fact finder could readily infer ADP knew that terminating an employee with a known disability while on medical leave would most likely violate FEHA under the circumstances." This is insufficient. And, although plaintiffs asserted at oral argument that they could allege that ADP knew its advice to Madkan violated the law, this was insufficient to establish an abuse of discretion. (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [although "the showing as to how the complaint may be amended need not be made to the trial court and can be made for the first time to the reviewing court," an "argument[ ] raised for the first time at oral argument[ ] is not adequate to justify [a] finding the trial court abused its discretion. New issues cannot generally be raised for the first time in oral argument"]; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1185–1186 [same], overruled on other grounds in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905.)

## DISPOSITION

The judgments are affirmed. Respondent ADP is awarded its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.